UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



——————————————————————————

ALEXANDER ARBUCKLE and JAVIER
SORIANO,

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Plaintiffs,

Index No.

-v-

ECF CASE



THE CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT ("NYPD") CHIEF OF
PATROL JAMES P. HALL; NYPD DEPUTY
COMMISSIONER OF LEGAL MATTERS
("DCLM") OFFICER KEVIN O'DONNELL; NYPD
CAPTAIN WILLIAM TAYLOR; NYPD
SERGEANT RICKIE KNAPP; NYPD SERGEANT
SALVATORE FERRO, SHIELD NO. 02819, NYPD
OFFICER ELISHEBA VERA, SHIELD NO. 25318;
NYPD OFFICER FREDDY YNOA, SHIELD NO.
18851; and NYPD OFFICER DENISE PITRE,
SHIELD NO. 14589,

Defendants.

——————————————————————————

Plaintiffs, ALEXANDER ARBUCKLE and JAVIER SORIANO, by their counsel,

GIDEON ORION OLIVER, as and for their Complaint against Defendants, hereby allege as

follows:

### PRELIMINARY STATEMENT

1.     Plaintiffs bring this action for compensatory damages, punitive damages and

attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988 for violations of their civil

rights, as secured by said statutes and the Constitution of the United States and the Constitution

and laws of the State of New York.

2.     On January 1, 2012, Plaintiffs participated in or were nearby peaceful activities

protected by the First Amendment to the United States Constitution associated with Occupy Wall

Street ("OWS") in the vicinity of 13th Street and 5th Avenue in New York County.

3.     At that location, at around 2:30AM on January 1, 2012, without lawful authority or justification, and acting pursuant to unlawful policies, practices, and customs complained of elsewhere herein, Defendants unlawfully arrested Plaintiffs, detained Plaintiffs for an excessive period of time, maliciously abused process against, and otherwise injured Plaintiffs.

4.     Defendants Vera and Pitre, and possibly other defendants, subsequently provided false information to prosecutors, and made false written statements in arrest processing and criminal prosecution documents including criminal court complaints sworn to under oath, and Defendant Vera falsely testified under oath during a criminal trial in connection with Plaintiff Arbuckle's arrest and prosecution.

5.     Other federal civil rights cases arising from the mass arrests made by Defendants and other NYPD agents at approximately the same time, place, and location and raising substantially similar policy, practice, and custom-related claims include, but may not be limited to, *Damian Treffs v. City of New York, et al.*, 12-cv-3030 (HB)(KNF), and *Jennifer Peat, et al. v. City of New York, et al.*, 12-cv-8230 (SAS)(HP). Both cases were resolved by settlement.

6.     To the extent they support Plaintiffs' *Monell* claims, or any other claims raised by Plaintiffs herein, the allegations from the most recently amended complaints in each of the *Treffs* and *Peat* matters are specifically incorporated by reference herein.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

8.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

9.     Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiffs' claims arose in

the Southern District of New York.

## **PARTIES**

10.     Plaintiff ALEXANDER ARBUCKLE is a Caucasian male, and at all times relevant to this action was a resident of New York State.

11.     Plaintiff JAVIER SORIANO is an Indigenous male, and at all times relevant to this action was a resident of New York State.

12.     Defendant THE CITY OF NEW YORK ("NYC" or "the City") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007.

13.     Defendant City is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement, and Defendant NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

14.     At all times relevant herein, Defendant  NYPD CHIEF OF PATROL JAMES P. HALL was the NYPD's Chief of Patrol; Defendant NYPD DEPUTY COMMISSIONER OF LEGAL MATTERS ("DCLM") OFFICER KEVIN O'DONNELL was a NYPD agent for the NYPD's DCLM; Defendant WILLIAM TAYLOR was a NYPD Captain; Defendants NYPD SERGEANT RICKIE KNAPP and NYPD SERGEANT SALVATORE FERRO were both NYPD Sergeants; and these aforementioned Defendants (collectively, the "Supervisory Defendants") were each and all supervisors and high-level NYPD policymaking officials personally involved in depriving Plaintiffs of their rights and/or in developing and/or implementing the unconstitutional policies, practices, customs and/or conduct complained of herein. They are each being sued herein in their individual and official capacities.

15.     Defendants were personally involved in designing and/or implementing the policies and practices complained of herein, and were personally involved in or responsible for directing, supervising, and/or assisting in Plaintiffs' arrests and/or arrest processing and/or failed to intervene to prevent injuries to Plaintiffs.

16.     At all times relevant herein, Defendants NYPD OFFICER ELISHEBA VERA, SHIELD NO. 25318; NYPD OFFICER FREDDY YNOA, SHIELD NO. 18851; and NYPD OFFICER DENISE PITRE, SHIELD NO. 14589 were officers, employees, and agents of the NYPD and who were personally involved in depriving Plaintiffs of their rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below. They are each being sued herein in their individual and official capacities.

17.     At all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

18.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by the Defendant City.

19.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by the Defendant City.

20.     Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

4

21.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

22.     Each individual Defendant is sued in her or his individual and official capacities.

## STATEMENT OF FACTS

23.     On December 31, 2011, Plaintiffs were acting as photojournalists documenting an OWS celebration in Zuccotti Park and police response thereto.

24.     After midnight, on January 1, 2012, some OWS demonstrators began to leave the park in groups.

25.     Between around 12:30AM and 2:30AM, Plaintiffs followed those OWS demonstrators for several miles, documenting their march from lower Manhattan to the East Village.

26.     Between around 12:30AM and 2:30AM, NYPD officers, including some or all of the Defendants, accompanied the demonstrators.

27.     Between around 12:30AM and 2:30AM, NYPD officers, including some or all of the Defendants, directed and facilitated the demonstration.

28.     At approximately 2:30AM on January 1, 2012, in the vicinity of 13th Street and 5th Avenue, Plaintiffs were each detained and arrested by NYPD officers, including the Defendants.

29.     At that time, place, and location, prior to their arrests, Plaintiffs had not been engaged in unlawful conduct.

30.     Rather, Plaintiffs had been engaged in constitutionally protected conduct, to wit, acting as photojournalists observing and documenting the OWS demonstration and police response thereto.

31.     Specifically, Plaintiff Arbuckle was walking on the sidewalk on 13th Street heading east toward Fifth Avenue, when a line of police scooters accelerated past him and blocked off the intersection of 13th Street and Fifth Avenue.

32.     As Mr. Arbuckle approached the line of scooters, a police officer shouted at him, "Up against the wall!"

33.     Mr. Arbuckle was subsequently placed in plastic flexcuffs and placed in an NYPD prisoner transport vehicle.

34.     Similarly, Plaintiff Soriano was walking on the sidewalk on 13th Street when a line of police scooters blocked off the intersection of 13th Street and Fifth Avenue.

35.     Without warning, Plaintiff Soriano was approached from behind by unidentified NYPD officers, and Defendant O'Donnell.

36.     Defendant O'Donnell and two other NYPD officers physically detained Plaintiff Soriano up against a wall.

37.     Defendant O' Donnell asked another one of the Supervisory Defendants in sum and substance whether Mr. Soriano was under arrest.

38.     Mr. Soriano explained to Defendant O'Donnell and at least another Supervisory Defendant that he was a photojournalist, not a protester.

39.     Rather than releasing Mr. Soriano, Defendant O'Donnell surrendered Mr. Soriano to other NYPD officers for mass arrest processing.

40.     Plaintiffs were subsequently transported to a NYPD facility for mass arrest processing.

41.     On December 31, 2011 and January 1, 2012, Defendant Hall was the highest ranking NYPD officer in the vicinity of Plaintiffs' arrests.

42.     On December 31, 2011 and January 1, 2012, Defendant Hall was the NYPD Incident Commander in the vicinity of Plaintiffs' arrests and was actually responsible for making command and control decisions as well as all supervisory decisions with respect to all fellow officers on the scene.

43.     Upon information and belief, according to NYPD policy and procedure, as Incident Commander, Defendant Hall and others among the Supervisory Defendants had the responsibility to ensure that any arrest teams assigned to process arrests had definite knowledge of each arrest and that arresting officers could articulate all the factual elements of the offense for which each arrest was effected.

44.     On December 31, 2011 and January 1, 2012, Defendant Hall and others among the Supervisory Defendants knew or should have known that the NYPD's crowd control plans with respect to the planned protest activities would result in unlawful mass arrests, uses of force, excessive detentions, and other injuries to Plaintiffs and others.

45.     Defendant Hall and others among the Supervisory Defendants knew or should have known that their crowd control tactics would result in purported dispersal orders that were impossible to comply with, and mass arrests without appropriate individualized determinations of probable cause.

46.     The Supervisory Defendants suggested, endorsed, ratified, or enacted a policy, practice, or procedure on December 31, 2011 and January 1, 2012 of not issuing summonses for Disorderly Conduct and other summons-eligible offenses in connection with OWS-associated protests.

47.     The Supervisory Defendants suggested, endorsed, ratified, or enacted a policy, practice, or procedure on December 31, 2011 and January 1, 2012, of having assigned arresting

officers speak with NYPD Legal Bureau and/or CJB officers as part of the mass arrest processing procedures.

48.     The Supervisory Defendants knew or should have known that processing the anticipated mass arrests as DAT's at a Mass Arrest Processing Center ("MAPC") would unnecessarily increase their arrest to release time.

49.     Upon information and belief, Defendant Hall others among the Supervisory Defendants enacted the no-summons policy, and the other mass arrest-related policies and practices complained of herein, in order to keep persons detained in connection with protest activities for excessive periods of time as compared to others detained for summons-eligible offenses and issued summonses.

50.     Defendant Hall and others among the Supervisory Defendants knew or should have known that the NYPD's December 31, 2011 and January 1, 2012 mass arrest processing plans would result in assigned arresting officers filling out NYPD and criminal court paperwork containing false allegations.

51.      At all relevant times herein on December 31, 2011 and January 1, 2012 at around 2:30AM, the Supervisory Defendants were each and all high-raking supervisor and policymaking officials on the scene who were actually responsible for making command and control decisions as well as supervisory decisions with respect to subordinate and other fellow officers on the scene.

52.     At all relevant times herein on December 31, 2011 and January 1, 2012, Defendants Vera, Ynoa, and Pitre were all NYPD Officers under the command and supervision of the Supervisory Defendants.

53.     At all times relevant herein on December 31, 2011 and January 1, 2012, all other Defendants were under Defendant Hall in the chain of command.

54.     At all relevant times herein on December 31, 2011 and January 1, 2012, Defendant Hall actually directed and/or supervised Defendants the other Supervisory Defendants' activities with respect to giving police orders and instructions and/or directing, supervising, or assisting in arrests or arrest processing, including Plaintiffs'.

55.     At some time around or after 2:30AM on January 1, 2014, the Supervisory Defendants directed and/or supervised the other Defendants, and other NYPD officers, with respect to effecting Plaintiffs' arrests and/or processing Plaintiffs' arrests.

56.     When Defendants gave or caused to be given dispersal orders and/or directed and/or supervised and/or otherwise participated in Plaintiffs' arrests, Defendants did not have probable cause to believe that any Plaintiff had committed Disorderly Conduct or any other offense.

57.     Defendant Vera was assigned to process, and did process, Mr. Arbuckle's arrest.

58.     Defendant Pitre was assigned to process, and did process, Mr. Soriano's arrest.

59.     Upon information and belief, Defendants Vera and Pitre were assigned to process, and did process, other arrests that morning.

60.     As part of Defendants' mass arrest processing duties, several Polaroid photographs of Defendants Vera and Pitre and Plaintiffs and/or other arrestees were taken by fellow NYPD officers.

61.     Upon information and belief, as part of Defendant Vera's and Defendant Pitre's mass arrest processing duties, they met with a supervisor from the NYPD's Legal Bureau.

62.     Upon information and belief, as part of Defendant Vera's and Defendant Pitre's mass arrest processing duties, they met with a supervisor from the NYPD's Criminal Justice Bureau.

63.     As part of Defendant Vera's mass arrest processing duties, Defendant Vera filled out NYPD paperwork regarding Mr. Arbuckle's arrest.

64.     As part of Defendant Vera's mass arrest processing duties, Defendant Vera filled out NYPD paperwork regarding another OWS-related arrest or arrest(s) on December 31, 2011 – January 1, 2012.

65.     In NYPD paperwork, Defendant Vera identified Defendant Ynoa has having assisted in Mr. Arbuckle's arrest.

66.     In NYPD paperwork, Defendant Vera identified Defendant Pitre has having assisted in Mr. Arbuckle's arrest processing.

67.     In NYPD paperwork and in a sworn statement, Defendant Vera identified Defendant Ferro as a supervisor on the scene and a witness to the circumstances leading up to Mr. Arbuckle's arrest, and as the person who gave an allegedly lawful order to disperse.

68.     As part of Defendant Pitre's mass arrest processing duties, Defendant Pitre filled out NYPD paperwork regarding Mr. Soriano's arrest.

69.     As part of Defendant Pitre's mass arrest processing duties, Defendant Pitre filled out NYPD paperwork regarding another OWS-related arrest or arrest(s) on December 31, 2011 – January 1, 2012.

70.     Defendant Vera's NYPD paperwork identified Defendant Knapp as a supervisor who directed and assisted Defendant Vera in arrest processing and who signed off on Defendant Vera's arrest processing paperwork.

71.     Defendant Pitre's NYPD paperwork identified Defendant Knapp as a supervisor who directed and assisted Defendant Vera in arrest processing and who signed off on Defendant Vera's arrest processing paperwork.

72.     In NYPD paperwork and in a sworn statement, Defendant Pitre identified Defendant Taylor as a supervisor on the scene and a witness to the circumstances leading up to Mr. Soriano's arrest, and as the person who gave an allegedly lawful order to disperse.

73.     After approximately seven hours each in police custody, each Plaintiff was eventually released with a Desk Appearance Ticket ("DAT").

74.     As a result of the Defendants' mass arrest processing policies, procedures, and practices, Defendants provided false and misleading information to DANY.

75.     In sworn accusatory instruments, Defendants Vera and Pitre made false written statements.

76.     Some of the false written statements Defendant Vera made were directly refuted by Defendant Vera's subsequent trial testimony.

77.     Based on the accusatory instrument falsely sworn by Defendant Vera, Mr. Arbuckle was charged with violating PL §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

78.     Based on the accusatory instrument falsely sworn by Defendant Pitre, Mr. Soriano was charged with violating PL §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

79.     After several court appearances, Mr. Arbuckle's case went to trial.

80.     Prior to trial, the 240.20(6) charge was dismissed.

81.     After a two-day trial at which Mr. Soriano testified, Mr. Arbuckle was acquitted of the 240.20(5) charge.

82.     The Court credited Mr. Arbuckle's testimony over Defendant Vera's.

83.     After several court appearances, Mr. Soriano's criminal case was dismissed under circumstances consistent with Mr. Soriano's innocence.

84.     As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

**FIRST CAUSE OF ACTION**

**DEPRIVATION OF RIGHTS UNDER THE
UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**

85.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86.     Defendants, under color of state law, unlawfully seized and arrested Plaintiffs.

87.     Defendants did not have probable cause to arrest Plaintiffs, nor was it objectively reasonable for Defendants to believe that they did have probable cause to arrest Plaintiffs.

88.     Defendants' decision to arrest Plaintiffs was based upon Plaintiffs' First Amendment-protected expression, and not upon Plaintiffs' violation of any provision of the law.

89.     By their conduct and actions and/or omissions in depriving Plaintiffs of their freedoms to be let alone, to move freely, to assemble, to associate, and to enjoy their property, in seizing them, in falsely arresting them, in assaulting and battering them, in maliciously abusing process against them, in retaliating against them for the exercise of constitutionally protected rights, in inflicting emotional distress upon them, in violating their rights to due process and equal protection, and/or for failing to remedy the aforementioned violations after having witnessed them or having been informed of them by report or appeal, and/or by failing properly to train, supervise, or discipline employees of the Defendant CITY OF NEW YORK under their

supervision, Defendants, acting under color of law and without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, deprived plaintiffs of the equal protection of the laws and/or of equal privileges and immunities under the laws, and thereby caused injury and damage in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments.

90.    By the conduct described above, Defendants, under color of state law, subjected Plaintiffs to the foregoing acts and omissions without due process of law and in violation of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, through 42 U.S.C. § 1983, thereby depriving Plaintiffs of their rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

a.  Freedom to engage in protected speech, expression and association, without undue constraint or governmental retaliation;

b.  Freedom from unreasonable seizures of their persons, including but not limited to the excessive use of force;

c.  Freedom from arrest without probable cause;

d.  Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiffs were aware and did not consent;

e.  Freedom from deprivation of liberty and property without due process of law;

f.  Freedom from malicious abuse of process;

g.  Freedom from malicious prosecution;

h.  Freedom from the lodging of false charges against him by police officers;

i.  Freedom from having police officers fabricate evidence against him;

j.  The enjoyment of equal protection, privileges and immunities under the laws.

91.     As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## SECOND CAUSE OF ACTION

### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

92.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

93.     By failing to remedy the wrongs committed by their subordinates, in failing to properly train, screen, supervise, or discipline their subordinates, and by personally participating in the constitutional injuries set forth above, the Supervisory Defendants caused damage and injury in violation of Plaintiffs' rights guaranteed under the United States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments, through 42 U.S.C. §1983.

94.     As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## THIRD CAUSE OF ACTION

### FAILURE TO INTERVENE

95.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

96.     Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian or falsely arresting a civilian.

97.     Defendants were present for the above-described incident and witnessed other defendants unlawfully arrest the Plaintiffs.

98.     Defendants' use of force against Plaintiffs was obviously excessive and unjustified under the circumstances yet Defendants who were not involved in the obviously unlawful uses of force failed to take any action or make any effort to intervene, halt or protect the Plaintiffs from being subjected to excessive force by other Defendants.

99.     Plaintiffs' arrests and the initiation of criminal charges against them were clearly without probable cause or other legal justification, and was based on facts alleged by Defendants, which Defendants knew to be false, yet Defendants failed to take any action or make any effort to intervene, halt or protect Plaintiffs from being unlawfully and wrongfully arrested and prosecuted.

100.    As a result of Defendants' violations of Plaintiffs' constitutional rights by failing to intervene in other Defendants' clearly unconstitutional use of force and Plaintiffs' unconstitutional arrests and prosecutions, Plaintiffs were deprived of their liberty, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## FOURTH CAUSE OF ACTION

## FALSE ARREST

101.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

102.    As a result of Defendants' conduct as described above, Plaintiffs were subjected to illegal, improper, and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

103.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CAUSE OF ACTION

### EXCESSIVE USE OF FORCE

104.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

105.    The level of force employed by Defendants was objectively unreasonable and in violation of Plaintiffs' constitutional rights.

106.    As a result of the foregoing, Plaintiffs were subjected to excessive force and sustained physical and emotional injuries.

## SIXTH CAUSE OF ACTION

### FIRST AMENDMENT

107.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

108.    In detaining, assaulting, and arresting Plaintiffs, in prosecuting Plaintiffs, and in implementing, enforcing, encouraging, sanctioning, and/or ratifying policies, practices, and/or customs punishing peaceful protest, Defendants violated Plaintiffs' rights to speak, assemble, associate, and petition the government for redress of grievances peaceably in retaliation for their speaking out on a matter of public concern and/or other protected conduct.

109.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered deprivations of their constitutional rights, pain and

suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## SEVENTH CAUSE OF ACTION

## MALICIOUS ABUSE OF PROCESS

110.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

111.     Defendants issued legal process in the form of police records and sworn statements in criminal court complaints against plaintiffs to detain and prosecute Plaintiffs

112.     Defendants arrested Plaintiffs in order to obtain a collateral objective outside the legitimate ends of the legal process.

113.     Defendants acted with malicious intent to do harm to Plaintiffs without excuse or justification.

114.     As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CAUSE OF ACTION

## MALICIOUS PROSECUTION

115.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116.      Defendants misrepresented and falsified evidence before the District Attorney of New York County ("DANY").

117.    Defendants did not make a complete and full statement of facts to DANY.

118.    Defendants withheld exculpatory evidence from DANY.

119.    Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiffs.

120.    Defendants lacked probable cause to initiate criminal proceedings against plaintiffs.

121.    Defendants acted with malice in initiating criminal proceedings against plaintiffs.

122.    Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiffs.

123.    Defendants lacked probable cause to continue criminal proceedings against plaintiffs.

124.    Defendants acted with malice in continuing criminal proceedings against plaintiffs.

125.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

126.    Notwithstanding defendants' misconduct, the criminal proceedings against plaintiffs were favorably terminated on the merits.

127.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

**NINTH CAUSE OF ACTION**

**DENIAL OF CONSTITUTIONAL RIGHTS TO FAIR TRIALS**

128.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

129.     Defendants created false information against plaintiffs.

130.     Defendants forwarded false information to prosecutors in the Office of the District Attorney of New York County.

131.     Defendants misled the prosecutors and/or the Court by providing false information and/or testimony in initiating and throughout the criminal proceedings.

132.     Defendants failed to turn over exculpatory evidence and other materials to the prosecutor despite proper demands and/or requests for the same.

133.     As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CAUSE OF ACTION

### *MONELL* CLAIMS AGAINST DEFENDANT CITY OF NEW YORK THROUGH 42 U.S.C. § 1983

134.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

135.     Other federal civil rights cases arising from the mass arrests made by Defendants and other NYPD agents at approximately the same time, place, and location and raising substantially similar policy, practice, and custom-related claims include, but may not be limited to, *Damian Treffs v. City of New York, et al.*, 12-cv-3030 (HB)(KNF), and *Jennifer Peat, et al. v. City of New York, et al.*, 12-cv-8230 (SAS)(HP). Both cases were resolved by settlement.

136.     To the extent they support Plaintiffs' *Monell* claims, or any other claims raised by

Plaintiffs herein, the allegations from the most recently amended complaints in each of the *Treffs* and *Peat* matters are specifically incorporated by reference herein.

137.    All of the acts and omissions by the named and unnamed individual police officer Defendants described above were carried out pursuant to policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the Defendant CITY and its agency, the NYPD.

138.    Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

139.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

140.    The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to:

        a.   The policy and practice of failing to ensure that constitutionally meaningful and adequate dispersal orders and opportunities to disperse are given prior to effecting arrests in connection with First Amendment assemblies;

        b.   The NYPD's use of force and use of force reporting policies and practices;

        c.   The policy and practice of treating perceived "groups" of people as a "unit" for "mass arrest" probable cause determination purposes without ensuring that

lawfully authorized and constitutionally significant notice, and a meaningful opportunity to disperse, were given and disregarded prior to treating the perceived "group" as a "unit";

d.  The policy and practice of applying PL § 240.20 (5) (Disorderly Conduct – Blocking Pedestrian or Vehicular Traffic) in circumstances where there is no lawful authority to arrest or detain perceived "groups" of people;

e.  The policy and practice of applying PL § 240.20 (6) (Disorderly Conduct – Failure to Obey Lawful Dispersal Order) in circumstances where neither lawful dispersal orders, nor meaningful opportunities to disperse, were in fact given;

f.  The use of arrests in lieu of issuing summonses for summons-eligible offenses;

g.  The use of police resources to corral and trap perceived participants in First Amendment assemblies;

h.  The policy and practice of assigning "arrest teams" of officers who had not witnessed the conduct allegedly giving rise to the need for arrests to "process" the arrests of multiple arrestees, including by filling out NYPD paperwork and swearing out accusatory instruments containing false information; and

i.  The policy and practice of inserting NYPD Legal Bureau and Criminal Justice Bureau agents into a special Mass Arrest Processing Plan using a centralized Mass Arrest Processing Center that manufactured false business and court records after the fact designed to give the impression that assigned arresting officers witnessed or knew things they had not, in fact, witnessed or known of.

141.    The aforementioned customs, practices, procedures and rules of the CITY and the NYPD were enacted based on Plaintiffs' First Amendment protected activity and not for any legitimate law enforcement purpose.

142.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered deprivations of their constitutional rights, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## JURY DEMAND

143.    Plaintiffs demand a trial by jury in this action of all issues pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

A.    Compensatory damages against the Defendants jointly and severally; and

B.    Punitive damages against the individual Defendants; and

C.    Attorney's fees and costs pursuant to 42 USC §1988; and

D.    Such other and further relief as the Court deems just and proper.

DATED:    New York, New York
          December 31, 2014


Respectfully submitted,

Gideon Orion Oliver
*Attorney for Plaintiffs*
277 Broadway, Suite 1501
New York, NY  10007
t: 646-263-3495