14 Civ. 10248 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER ARBUCKLE AND JAVIER SORIANO,

Plaintiffs,

-against-

THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT ("NYPD") CHIEF OF PATROL JAMES P. HALL; NYPD DEPUTY COMMISSIONER OF LEGAL MATTERS ("DCLM") OFFICER KEVIN O'DONNELL[1]; NYPD CAPTAIN WILLIAM TAYLOR; NYPD SERGEANT RICKIE KNAPP; NYPD SERGEANT SALVATORE FERRO, SHIELD NO. 02819, NYPD OFFICER ELISHEBA VERA, SHIELD NO. 25318; NYPD OFFICER FREDDY YNOA, SHIELD NO. 18851; and NYPD OFFICER DENISE PITRE, SHIELD NO. 14589,

Defendants,

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*ZACHARY CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*


*Of Counsel Lamar Winslow; Joy Anakhu*
*Tel: (212) 356-2579*
*Matter No. 2015-023716*

---

[1] Kenneth O'Donnell's correct rank is Detective.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

RULE 12(b)(6) STANDARD FOR DISMISSAL ........................................................ 3

PLAINTIFFS FAIL TO PLAUSIBLY PLEAD PERSONAL INVOLVEMENT AGAINST
CHIEF JAMES P. HALL, CAPTAIN WILLIAM TAYLOR, SERGEANT RICKIE KNAPP,
SERGEANT SALVATORE FERRO, OFFICER ELISHEBA VERA, OFFICER FREDDY
YNOA, AND OFFICER DENISE PITRE ......................................................................3

PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE FALSE ARREST CLAIM AGAINST ANY
DEFENDANT ...........................................................................................................5

PLAINTIFFS FAIL TO PLEAD EXCESSIVE FORCE CLAIMS .......................................7

ANY FIRST AMENDMENT RETALIATION CLAIMS FAILS AS PLED ...........................9

PLANTIFFS' MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED ...................11

PLAINTIFFS' MALICIOUS ABUSE OF PROCESS CLAIM MUST BE DISMISSED .........14

PLAINTIFFS' DEPRIVATION OF FAIR TRIAL RIGHTS CLAIM MUST BE DISMISSED  16

ANY CLAIMS UNDER DUE PROCESS  OR EQUAL PROTECTION
FAILS AS A MATTER OF LAW...................................................................................17

PLAINTIFFS' EXCESSIVE DETENTION CLAIM MUST BE DISMISSED AS PLED ........19

PLAINTIFFS' MONELL THEORIES MUST BE DISMISSED AS PLED ...........................19

CONCLUSION........................................................................................................ 24

## PRELIMINARY STATEMENT

Alexander Arbuckle and Javier Soriano ("Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 against Defendants the City of New York; New York City Police Department ("NYPD") Chief of Patrol James P. Hall; NYPD Detective Kenneth O'Donnell; NYPD Captain William Taylor; NYPD Sergeant Rickie Knapp; NYPD Sergeant Salvatore Ferro, Shield No. 02819;  NYPD Officer Elisheba Vera, Shield No. 25318; NYPD Sergeant Freddy Ynoa, Shield No. 18851; and NYPD Officer Denise Pitre, Shield No. 14589. Plaintiffs allege that they are photojournalists who followed an Occupy Wall Street march from Lower Manhattan to the East Village on January 1, 2012, between 12:30 a.m. and 2:30 a.m.   Plaintiffs' Complaint fails because: (1) Plaintiffs have failed to provide factual support for a number of their claims, and for any claims against certain defendants; (2) Plaintiff's claim for excessive force, is not supported by any factual pleadings and insufficient as a matter of law; (3) Plaintiffs' assault and battery and infliction of emotional distress claims are similarly unsupported; (4) Plaintiffs have failed to file any notice of claim or asserted any state claim timely; (5) Plaintiff's action for malicious abuse of process is unsupported; (6) Plaintiffs' denial of a right to fair trial claim is insufficiently plead; (7) Plaintiffs' First Amendment allegations fail and any individual defendants involved in that claim are entitled to qualified immunity as a matter of law; (8) Plaintiffs municipal liability claims fail for various reasons including the failure to plead sufficient factual material to support them; and finally (9), Plaintiffs bring each of their claims against all of the defendants but assert little to no involvement of any individual defendants in their alleged Constitutional violations. Accordingly, Defendants now move to dismiss all claims against all Defendants pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiffs allege that they are photojournalists who followed an Occupy Wall Street ("OWS") march from Lower Manhattan to the East Village on January 1, 2012, between 12:30 a.m. and 2:30 a.m. (Pl.'s Compl., annexed to the September 11, 2015, Declaration of Joy Anakhu (hereinafter "Ex. A.") as Exhibit "A," at ¶¶ 23-25.  At 2:30 a.m. Plaintiffs were arrested while observing and documenting the OWS demonstration and police response. (Ex. A, ¶¶ 28, 30.)  Plaintiff Arbuckle was walking on the sidewalk on 13th Street headed towards Fifth Avenue when he was arrested.  (Ex. A, ¶¶ 31, 33.) Plaintiff Soriano was approached from behind and arrested by unidentified officers and Defendant O'Donnell.  (Ex. A, ¶¶ 34, 36-39.)  Plaintiffs were transported for arrest processing. (Ex. A, ¶ 40.)  Plaintiffs go on to propound that they believe their arrest processing was improper. (Ex. A, ¶ 42-45.)  Plaintiffs also claim that these procedures resulted in dispersal orders that were impossible to comply with. (Ex. A, ¶ 45-56.)

Plaintiffs' claim that their arrests were assigned to Defendants Vera and Pitre for processing, and they filled out paperwork regarding the arrests.  (Ex. A, ¶ 57-59.)  Defendant Knapp is identified as assisting and signing off on the arrest paperwork of Defendants Vera and Pitre.  (Ex. A, ¶ 70-71.)  According to the Complaint, Defendant Taylor is identified in some arrest paperwork as a supervisor who was on the scene, a potential witness, and who issued lawful orders to disperse.  (Ex. A, ¶ 72.)  Defendant Ferro is similarly identified as having issued lawful orders to disperse, a potential witness, and a supervisor.  (Ex. A, ¶ 67.)  Plaintiff Arbuckle was acquitted at trial of one charge, the other was previously dismissed.  (Ex. A, ¶ 80-81.)  Plaintiff Soriano's charges were dismissed prior to trial after a 'few' court appearances.  (Ex. A, ¶ 83.)

## RULE 12(b)(6) STANDARD FOR DISMISSAL

Evaluating the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (U.S. 2009). The Court may and should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 663. After examining the remaining factual matter, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)).

### PLAINTIFFS FAIL TO PLAUSIBLY PLEAD PERSONAL INVOLVEMENT AGAINST CHIEF JAMES P. HALL, CAPTAIN WILLIAM TAYLOR, SERGEANT RICKIE KNAPP, SERGEANT SALVATORE FERRO, OFFICER ELISHEBA VERA, OFFICER FREDDY YNOA, AND OFFICER DENISE PITRE

Plaintiffs seek to bring claims against several Defendants, not because they engaged in impermissible conduct, but because they were proximal to the Plaintiffs on the day of their arrests. "[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." McCoy v. Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (quotation marks and citations omitted). "The Second Circuit has defined 'personal involvement' to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" Garnett v. City of New York, 2014 U.S. Dist. LEXIS 112440, at *18-19 (S.D.N.Y. Aug. 13, 2014) (citing Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). "Personal involvement of defendants in

3

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).  See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). And, "each Government official . . . is only liable for his . . . own misconduct." Iqbal, 556 U.S. at 677.

   Here, Plaintiffs' claims do not satisfy the requirements set out by the Second Circuit, and the failings of the pleadings cannot be remedied by simply labeling certain Defendants "Supervisory Defendants." (Ex. A, ¶ 14.) Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (a defendant in a § 1983 action may not be held liable merely because he holds a high position of authority). For instance, Plaintiffs bring suit against Defendant Chief Hall because "[o]n December 31, 2011, and January 1, 2012, Defendant Hall was the highest ranking NYPD officer in the vicinity of Plaintiffs' arrests. (Ex. A, ¶ 41.)  Claims against Defendant Captain Taylor are premised on an assertion that he was as a supervisor on the scene and a witness to the circumstances leading up to Mr. Soriano's arrest. (Ex. A, ¶ 72.)  Plaintiffs bring claims against Defendant Sergeant Knapp because he "assisted Defendant Vera in arrest processing" and "signed off on Defendant Vera's arrest processing paperwork." (Ex. A, ¶ 71.) Similarly, Sergeant Salvatore Ferro was named as a defendant because he was allegedly "a supervisor on the scene and a witness to the circumstances leading up to Mr. Arbuckle's arrest, and as the person who gave an allegedly lawful order to disperse." (Ex. A, ¶ 67.)  Officer Elisheba Vera and Officer Denise Pitre are named because they were "assigned to process and did process" the Plaintiff's arrest paperwork. (Ex. A, ¶¶ 57-58.)  Under constitutional principles, to the extent any one defendant officer relied upon information obtained from any other officers or sources, the claims against them would be subject to dismissal under the fellow officer rule.  See Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013); Savino v. City of New York, 331 F.3d 63, 74 (2d

Cir. 2003).  Plaintiffs do not even attempt to plead that these named Defendants were personally involved in Plaintiff's arrests, or in any unconstitutional conduct.

The factual allegations above do not lead to a plausible inference that any of these individual Defendants were personally involved in Plaintiff's arrest, nor do the allegations assert that any of these Defendants participated in the use of any force against Plaintiffs.  Accordingly, any claims predicated on the arrest, any use of force, or a failure to intervene and supervise must be dismissed against these Defendants.

## PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE FALSE ARREST CLAIM AGAINST ANY DEFENDANT

Plaintiff's claims for false arrest fail because there was probable cause for their arrest.  "[T]he existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006). "'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Torraco v. Port Authority of New York and New Jersey, 615 F.3d 129, 139 (2d Cir. 2010) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). "The inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks and citation omitted).  "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Illinois v. Gates, 462 U.S. 213, 235 (1983) (internal quotation marks omitted).

Section 240.20(6) of the New York Penal Law provides that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or

recklessly creating a risk thereof . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law § 240.20(6).

Here, there was probable cause to arrest Plaintiffs for refusing to obey a police order to disperse under N.Y. Penal Law § 240.20(6).  The Complaint admits that both Plaintiffs were arrested for violating N.Y. Penal Law § 240.20(6). (Ex. A, ¶¶ 77-78.)  Plaintiffs admit that they were traveling with groups of protesters.  (Ex. A, ¶¶ 23-25.)  Plaintiffs also admit that orders to disperse were given. (Ex. A, ¶¶ 56.) An order to disperse issued by the police is lawful unless it is purely arbitrary, and not calculated in any way to promote a public interest.  U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).  It is well-settled that "[c]ontrol of crowds is a legitimate police function."  Schumann v. New York, 270 F. Supp. 730, 733 (S.D.N.Y. 1967); Matter of Ashley M., 30 A.D.3d 178, 180 (1st Dept. 2006) ("Crowd control is a legitimate governmental function exercised by the police department").  Plaintiffs plead no facts to suggest they complied with these orders. Accordingly, based on the allegations in the Complaint, there was probable cause to arrest Plaintiffs for violating N.Y. Penal Law § 240.20(6).

Even assuming, *arguendo*, that there was not probable cause to arrest Plaintiffs, the false arrest claims must be dismissed as the Defendants are entitled to qualified immunity. "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014).

Here it was objectively reasonable to believe that Plaintiffs had broken the law by refusing to obey a police order to disperse. As noted above, Plaintiffs were traveling with a group of protesters and orders to disperse were given.  Plaintiffs remained on the sidewalk and were

6

subsequently arrested.  A reasonable officer could have inferred from these facts that Plaintiffs were in violation of N.Y. Penal Law § 240.20(6).  Even if that determination was in error, qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted).  The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"

## PLAINTIFFS FAIL TO PLEAD EXCESSIVE FORCE CLAIMS

In order to prevail on a claim for excessive force, a plaintiff must establish "through evidence, that the 'alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'"  Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335, *11 (S.D.N.Y. 2005); citing United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).  But, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham v. Connor, 490 U.S. 397; citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

"The right to make an arrest carries with it the right to use some degree of physical coercion as long as the force used is reasonable based on the perception of the arresting officer at the time of arrest."  Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310, *17 (S.D.N.Y. 2012) (citing Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001)).  "Courts in this District have routinely dismissed excessive force claims where the plaintiff alleged that he was thrown to the ground, but did not allege any physical injuries. Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y. May 12, 2015) (citations omitted).

The Second Circuit has been clear that minimal injuries also speak to the reasonableness of force used.  Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010)(Striking multiple times with a metal flashlight in the course of a hand-to-hand struggle is subject to qualified immunity, even where plaintiff claims he was not resisting). "[T]he extent of injury suffered by [a plaintiff] is one factor that may suggest 'whether the use of force could plausibly have been thought necessary" in a particular situation.  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). Therefore, where an arrestee suffers *de minimis* injuries, and/or fails to provide evidence of any alleged injuries, an excessive force claim must fail. Esmont v. City of New York, 371 F.Supp. 2d 202, 214 (E.D.N.Y. 2005). As a result, "a *de minimis* use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993); see also Jackson v. City of New York, 2005 U.S. LEXIS 12986 (S.D.N.Y 2005) (granting motion on claim that plaintiff was beaten in his chest, groin and head during struggle with officers); Santiago v. Campisi, 91 F. Supp. 2d 665, 674 (S.D.N.Y. 2000)(claims dismissed where no medical evidence of injury).

In this case, as a threshold matter, Plaintiffs do not plead that any individually named defendant used excessive force against them, which is fatal to this claim.  Further, Plaintiffs do not claim to have received medical treatment or suffered any injuries as a result of the force used to affect their arrests.  As a result, Plaintiffs failed to allege any facts that establish that the use of force here was anything more than *de minimis* and reasonable.  In short, there are no facts alleged in the Complaint that would allow the inference that Defendants were objectively unreasonable or constituted more than a *de minimis* use of force when affecting the Plaintiffs' arrests. Therefore any claim for excessive force must be dismissed.

## ANY FIRST AMENDMENT RETALIATION
## CLAIMS FAILS AS PLED

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013). Plaintiffs' First Amendment retaliation claim fails as probable cause existed for their arrest; they do not sufficiently allege that any constitutional deprivation was caused by the exercise of their First Amendment rights, or even that they had a First Amendment protected interest in this case. Alternatively qualified immunity shields the actions of the officers.

Probable cause is a complete defense to a claim of First Amendment retaliation. "[Plaintiff's] claims of malicious prosecution, unreasonable search and seizure, and First Amendment retaliation fail because defendants had probable cause…" Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012). As discussed above, probable cause existed for the arrest of Plaintiffs, and qualified immunity shields the individual defendants from liability related to that arrest. Accordingly, no First Amendment retaliation claim can lie.

Plaintiffs also cannot satisfy the first and second requirement of a retaliation claim because Plaintiffs plead no facts establishing that they were engaged in protected speech at the time of their arrest, and cannot plausibly plead that officers were motivated by that speech. Plaintiffs allege only that they were acting as photojournalists documenting an OWS event in Zuccotti Park, a subsequent march, and the police response. (Ex. A, ¶¶ 23, 26, 30.) They engaged in this activity for approximately two hours without police interference. However, the only factual allegations related to their conduct prior to their arrest indicate that they were walking on the sidewalk. (Ex. A, ¶¶ 31, 34.)

9

> Plaintiffs have failed to set forth plausible allegations that they were engaged in First Amendment protected conduct, let alone that defendants' actions were motivated by any First Amendment protected conduct.  Merely photographing or recording police activity is not a First Amendment protected activity.  Rather, the Complaint clarifies that Plaintiff acted as "a citizen journalist" filming an arrest and other police activity. The only potentially expressive actions that Plaintiff took leading up to his injury thus involved filming an arrest and filming the commotion with the barricade. Although some Courts of Appeals have held that the First Amendment protects the right to film the police, neither the Supreme Court nor the Second Circuit has addressed "the right to photograph and record the police. Mesa v. City of New York, 09 Civ. 10464, 2013 U.S. Dist. LEXIS 1097, 2013 WL 31002, at *25 (S.D.N.Y. Jan. 3, 2013); see also Lawson v. Hilderbrand, 13 Civ. 206, 2015 U.S. Dist. LEXIS 21092, 2015 WL 753708, at *13 (D. Conn. Feb. 23, 2015); Ortiz v. City of New York, 11 Civ. 7919, 2013 U.S. Dist. LEXIS 136897, 2013 WL 5339156, at *4 (S.D.N.Y. Sept. 24, 2013). It consequently remains unclear whether Plaintiff's filming was protected by the First Amendment.

Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134, *19-20 (S.D.N.Y. Mar. 31, 2015). Additionally, as the Court observed in Pluma, as a 'citizen journalist' Plaintiffs' right to record and photograph the police is not sufficiently defined to preclude at least a finding of qualified immunity on plaintiff's First Amendment claim under Second Circuit law, and certainly not as the law existed on January 1, 2012.  See also Goodman v. City of New York, 14 Civ. 5261 (S.D.N.Y. February 18, 2015) (CM).  It is important to note, that the question of whether filming police activity is legal is separate and distinct from whether it represents a protected First Amendment right.  Filming police activity, assuming one does so without interfering, does not violate the law, but that alone does not mean it is sanctioned by the First Amendment, let alone a clearly protected right.  As multiple courts in this district have affirmed conduct similar to what the plaintiffs allege here does not set forth a First Amendment right that would permit relief under a retaliation theory.  And even if that right was found to exist, it cannot be said to have been sufficiently defined to preclude qualified immunity for the individual defendants.

Furthermore, Plaintiffs do not set forth any allegation that they were engaged in documenting with film or otherwise at the time of their arrest.  (Ex. A, ¶¶ 31, 34.)  This is fatal to

their claim for two reasons.  First, Plaintiffs cannot claim they were being retaliated against for a right they were not exercising.  Second, Plaintiffs cannot plausibly argue that the actions of defendants were motivated by a right they were not exercising.  Plaintiffs understand this and plead it as set forth in paragraph 38 of the complaint.  (Ex. A, ¶ 38.)  Plaintiff Soriano alleges that when he was detained he explained to officers that he was not a protestor, but a journalist. This demonstrates that plaintiff believed his arrest was premised on his misidentification as a protestor, not on his documenting or filming anything.  As such, Plaintiffs themselves do not believe that their arrest was premised on any First Amendment theory they were engaged in, but on mistaken identity.

For these reasons, Plaintiffs' First Amendment retaliation theory fails, and must be dismissed.  Alternatively, defendants are entitled to qualified immunity on any First Amendment theory.

## PLAINTIFFS'   MALICIOUS   PROSECUTION CLAIM MUST BE DISMISSED

Under New York law in order for plaintiffs to prevail on a malicious prosecution claim they must show: (1) that the defendants initiated a prosecution against them, (2) that the defendants lacked probable cause to believe the proceeding could succeed, (3) that the defendants acted with malice, and (4) that the prosecution was terminated in the plaintiffs' favor. Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)).  Further, in addition to the elements of malicious prosecution under state law, in order to allege a cause of action for malicious prosecution under §1983, plaintiffs must also show that there was 5) a sufficient post-arraignment liberty restraint to implicate their Fourth Amendment rights. Rohman v. New York

City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citing Murphy v. Lynn, 118 F.3d 938, 944-46 (2d Cir. 1997).

   Here, Plaintiffs cannot show the existence of each element necessary to sustain their burden. Specifically, there was probable cause for Plaintiffs' prosecution. "Probable cause to commence a criminal proceeding exists when a defendant has 'knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting [plaintiff] in the manner complained of." Jenkins v. City of New York, 98 Civ. 7170 (JGK), 1999 U.S. Dist. LEXIS 15353, at *30 (S.D.N.Y. Sept. 29, 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000) (quoting Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994)). So long as there is probable cause to arrest, there is probable cause to prosecute unless the discovery of some intervening fact makes the groundless nature of the criminal charges readily apparent. Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996).

   As discussed more fully above, the Complaint provides ample facts to establish that defendants had probable cause to arrest Plaintiffs under, inter alia, N.Y. Penal Law §240.20. Plaintiffs concede that orders were given to disperse and plead no facts to suggest they complied. Additionally, Plaintiffs also admit that the charges lodged against them were pursuant to the disorderly conduct statute of N.Y. Penal Law §240.20(5)(6). Even if Plaintiffs' arrest were improper their malicious prosecution claims still fails for lack of malice. Strumpf v. Asdourian, 2006 N.Y. Misc. LEXIS 3976 (N.Y. Sup. Ct. 2006) ("The Court of Appeals has long held that the term malice, in the context of malicious prosecution, means conscious falsity.") Plaintiffs also fail to adequately establish that any defendant initiated a prosecution for the purpose of their malicious prosecution claim. "Since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure

resulted from the initiation or pendency of judicial proceedings." Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. N.Y. 2000); (citing Murphy v. Lynn, 118 F.3d 938 (2d Cir. N.Y. 1997)). It is not enough for a party to report information. "[T]he mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." DeFilippo v. County of Nassau, 183 A.D.2d 695, 696, (2d Dep't 1992); See Rohman at 215 (2d Cir. N.Y. 2000).

Here Plaintiffs have not sufficiently alleged that each of defendants initiated the prosecution for the purpose of maliciously prosecuting them, therefore this claim must be dismissed. Additionally, within the context of Plaintiff's §1983 claim, plaintiff Soriano will be unable to show that he was subject to a "deprivation of liberty consistent with the concept of seizure," Faruki v. City of New York, 517 Fed. Appx. 1, 2 (2d. Cir. 2013) (citing Washington v. Cnty. Of Rockland, 373 F.3d 310, 316 (2d. Cir. 2004)) "that resulted from the initiation or pendency of judicial proceedings." Id. (citing Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997). Here, as in Faruki, plaintiff Soriano was arrested and issued a desk appearance ticket for disorderly conduct that required him to appear in court on a few occasions. This is insufficient to give rise to a constitutional deprivation that would support a malicious prosecution claim. See Burg v. Gosselin, 591 F.3d 95, 101 (2d Cir. 2010) ("[A] pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure."). See also Murphy, 118 F.3d at 942, 946 (Court found a restriction on out-of-state travel and eight court appearances constituted sufficient deprivation for a Fourth Amendment deprivation). Therefore, as noted about Plaintiffs' malicious prosecution claim must be dismissed.

## PLAINTIFFS' MALICIOUS ABUSE OF PROCESS CLAIM MUST BE DISMISSED

As noted above there was probable cause for Plaintiffs' arrests and any claim for malicious abuse of process must be dismissed as a matter of law. See Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466, *15-16 (S.D.N.Y. 2010) (a finding of probable cause defeats a claim for malicious abuse of process); citing Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358, at *49-50 (S.D.N.Y. 2009).

Even if this Court were to find that probable cause was lacking, Plaintiffs' claim for malicious abuse of process still fails. In order to state a claim for which relief may be granted, Plaintiffs must plausibly allege that Defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 80 (2d Cir. 1994)); Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984)).  As it relates to the collateral element, courts in New York have found detailed allegations such as the infliction of economic harm, extortion, blackmail and retribution as examples of objectives meeting this prong. See Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 404, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975).

Here, Plaintiffs' failure to sufficiently plead that defendants employed process in order to obtain a collateral objective, is fatal to their abuse of process claim. While Plaintiffs argue that Defendants issued process in the form of "false" police records and sworn statements (see Ex. A, ¶¶ 75, 111) this alone is not a showing of a collateral objective. As noted in De Santis v. City of New York, the requirement of a collateral objective is not met merely by showing a malicious motive; there must be an improper purpose for the use of process.  See De Santis v.

City of New York, 2011 U.S. Dist. LEXIS 99126, at *24 (S.D.N.Y. 2011) (citing Savino, 331 F.3d at 77; Hauser v. Bartow, 273 N.Y. 370, 374 (1937) ("It is not enough that the actor have an ulterior motive in using the process of the court.")).

　　　　Further, the Complaint is devoid of any facts to suggest a collateral objective occurred after the criminal process was initiated. See Richardson v. N.Y. City Health & Hosps. Corp., 2009 U.S. Dist. LEXIS 25247, at *45-47 (S.D.N.Y. 2009)(collecting cases); see also Lopez v. City of New York, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) ("The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim."). Here, the paltry facts allege that any creation of NYPD paperwork or Defendants' actions of sworn statements in criminal court complaints occurred well before they were issued DATs. Without more, these facts are not enough to push this theory over the plausibility threshold as outlined in controlling cases. See Iqbal, 556 U.S. at 663.

　　　　Moreover, plaintiffs plead no plausible facts to suggest they suffered actual or special damages from the alleged abuse of process. See Bd. Of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 405 (1975); citing Bohm v. Holzberg, 365 N.Y.S.2d 262, 264 (App. Div. 1975) ("plaintiff's allegations contain no mention of special damage, but only of alleged compensatory and punitive damages…the law is clear that a cause of action for [abuse of process] must contain a statement of reasonably identifiable losses sustained by the plaintiff, i.e., only actual or special damages can be recovered…"). Any conclusory statements that Plaintiffs suffered "costs and expenses" (Ex. A, ¶ 114), without factual support are not enough to maintain this claim and must be dismissed.

　　　　To the extent Plaintiffs plead that their damages arise out of an alleged retaliation, fabrication of evidence or excessive detention, their abuse of process claim must be dismissed as

duplicative. See, e.g., Zahrey v. City of New York, 2009 U.S. Dist. LEXIS 31893, * 34-35 (S.D.N.Y. 2009) (dismissing some of plaintiff's claims as duplicative where cause of action was subsumed in plaintiff's other more specifically-alleged constitutional violations). Based on the foregoing, any claims predicated on a malicious abuse of process must be dismissed.

## PLAINTIFFS' DEPRIVATION OF FAIR TRIAL RIGHTS CLAIM MUST BE DISMISSED

Similarly, Plaintiffs' claim based on an interference of their right to a fair trial must also be dismissed. They allege in a conclusory fashion that defendants fabricated evidence against them. Thus to overcome a motion to dismiss, Plaintiffs must sufficiently allege that officers created false evidence likely to influence a jury's decision and forwarded it to prosecutors, thereby causing Plaintiffs to suffer a deprivation of liberty. See Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); accord Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003). Here, Plaintiffs allege that officers "forwarded false information," "misled the prosecutors and/or the Court" by "providing false information and/or testimony" and "failed to turn over exculpatory evidence." (Ex. A, ¶¶ 129-132.) However, these allegations are conclusory and must be dismissed. See Abdul-Rahman v, City of New York, 2012 U.S. Dist. EXIS 45653, *34 (E.D.N.Y. 2012).  Plaintiffs plead no facts that "specify in what way the statements, information, or testimony were false or even in what material respect the charges against [them] were false." Id.  This is particularly true in light of Plaintiffs' own admissions that orders to disperse were given and charges were issued based on their failure to obey those orders. See Ex. A ¶¶ 45, 77-78.

Additionally, Plaintiffs cannot support a denial of a right to fair trial claim by highlighting the alleged inconsistent testimony of an officer. (Ex. A, ¶ 76). As noted in Waddlington v. City of New York, Defendant's purported offering of "inconsistent testimony as

to various details" of the arrests, "without more, does not establish liability under § 1983 for providing false information to prosecutors." <u>Waddlington</u>, 2013 U.S. Dist. LEXIS 136791, at *28-29. Here, there are no facts to support a plausible fair trial claim against any defendant. Even accepting Plaintiffs' baseless allegation as true for the sole purpose of this motion, Plaintiffs' only allegation against several officers is that they assisted in the preparation of arrest documents, however, the arrest documents do not give rise to their Constitutional claims, particularly when the Plaintiffs had been in custody and under arrest long prior to the preparation of paperwork. Similarly courts have found that when no trial is held, no claim for the denial of a right to a fair trial can stand. <u>See</u> <u>Brown v. City of New York</u>, 2014 U.S. Dist. LEXIS 181736, *6-7 (E.D.N.Y. Dec. 23, 2014), this is particularly of note as plaintiff Soriano admits that his charges were dismissed prior to trial.

In short, Plaintiffs' claims as it relates to a denial of rights to a fair trial must be dismissed as implausible and without merit.

## ANY CLAIMS UNDER DUE PROCESS  OR EQUAL PROTECTION FAILS AS A MATTER OF LAW

Plaintiffs also appear to allege violations of the Fourteenth Amendment based on due process grounds. (<u>See</u> Ex. A, ¶ 90(e).) Nonetheless, Plaintiffs do not provide facts that would support an independent claim under this theory. It is well noted that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' such a claim." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)) (internal quotation omitted); <u>see</u> <u>also</u> <u>Bell v. Lennon</u>, 971 F. Supp. 830, 833 (S.D.N.Y. 1997) ("analysis of plaintiffs' claims under the substantive due process clause would be duplicative and is therefore barred by the rule

articulated in <u>Albright</u>.").  Here, Plaintiffs' Complaint already sets out specific claims for false

arrest, excessive force, First Amendment Retaliation, etc.

These claims already have explicit textual sources of constitutional protection (the

Fourth and First Amendments); therefore, any due process claim should be dismissed as

duplicative. Even assuming, *arguendo*, that Plaintiffs could bring a separate claim under the Due

Process Clause; this claim would still be subject to dismissal. A substantive due process claim is

only appropriate where governmental conduct "shocks the conscience" and transgresses the

"decencies of civilized conduct." <u>Rochin v. California</u>, 342 U.S. 165, 172-73 (1952). Purely

negligent conduct by officials is not constitutionally recognized under a substantive due process

claim. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986). Nor is recklessness or gross

negligence except in rare instances. <u>See</u> <u>County of Sacramento</u>, 523 U.S. at 849-50 (citations

omitted). In the case at bar, the action of placing Plaintiffs under arrest after they concede that

orders were given to disperse cannot be seen as conduct that "shocks the conscience" and

transgresses the "decencies of civilized conduct." Therefore any claim under due process must be

dismissed.

Similarly, any conclusory allegations that officers deprived Plaintiffs of equal

protection are also without merit. (<u>See</u> Ex. A, ¶ 90(j).) Plaintiffs fail to plead any plausible facts

to suggest they were deprived of equal protection under the law. As noted in <u>Iqbal</u>, the Court

may and should disregard "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 663.  In short, factual allegations contained in

plaintiff's Complaint do not assert enough facts "to raise a right to relief above the speculative

level" as it relates to an equal protection claim. See <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955,

1965 (2007).  Therefore, any claim predicated on equal protection under the 14th Amendment must be dismissed.

## PLAINTIFFS' EXCESSIVE DETENTION CLAIM MUST BE DISMISSED AS PLED

Plaintiffs also appear to plead an excessive detention claim. (See Ex. A, ¶ 44.) This fails under the facts pled and as a matter of law.  A detention of less than forty-eight hours is presumptively reasonable.  "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein.  Thus, prompt generally means within 48 hours of the warrantless arrest."  Bryant v. City of New York, 404 F.3d 128, 137 (2d Cir. 2005); citing County of Riverside v. McLaughlin, 500 U.S. 44 (1991); Powell v. Nevada, 511 U.S. 79 (1994); Gerstein v. Pugh, 420 U.S. 103 (1975).  This was recently affirmed by the Second Circuit in the context of an arrest at Zuccotti Park.  "Because the plaintiffs were arraigned within 48 hours, any pre-arraignment delay the plaintiffs experienced was presumptively reasonable."  Lebowitz v. City of New York, 606 Fed. Appx. 17, 18 (2d Cir. 2015).

In this case plaintiffs' allegations are that they were released after approximately 7 hours in police custody.  (See Ex. A, ¶ 73.)  This is far short of forty-eight hours, is presumptively reasonable, and does not shock the conscience.  As Plaintiffs present no legally cognizable theory or set of facts to overcome the applicable law, any claim for excessive detention must be dismissed.

## PLAINTIFFS' MONELL THEORIES MUST BE DISMISSED AS PLED

At the outset, where there is no underlying constitutional violation, there can be no liability pursuant to a theory of municipal liability.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Regardless of what municipal liability theory Plaintiffs meant to frame, they

have not suffered any constitutional violation Plaintiffs' and cannot maintain a claim for municipal liability.  Plaintiffs' claim for municipal liability fails as they have never plausibly presented a claim of municipal liability and they are unable to establish any municipal liability theory that is meaningfully connected to their allegations.

> The language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). To hold a municipality liable under § 1983 for the allegedly unconstitutional acts of its employees, a plaintiff must prove (1) that the alleged actions by the employees were the result of a specific official policy, custom, or practice of the municipal defendant; (2) that this policy, practice, or custom caused plaintiff's alleged injuries; and (3) that those alleged injuries constituted a violation of plaintiff's constitutional rights.  Monell, 436 U.S. 658, 691-694; Bosone v. County of Suffolk, 274 A.D.2d 532, 534 (2d  Dept. 2000).

Plaintiffs set forth nine distinct theories in the hope that some of them can survive the instant motion.  (Ex. A, ¶ 140(a)-(i).)  These include: 1) a policy or practice of failing to ensure that meaningful and adequate dispersal orders are given prior to arrests at First Amendment assemblies; 2) "The NYPD's use of force and use of force reporting policies and practices;" 3)  treating groups as a unit for mass arrest probable cause determinations without ensuring lawful notice and an opportunity to disperse were issued; 4) applying N.Y. PL 240.20(5) where there is no lawful authority to arrest or detain perceived groups; 5) applying N.Y. PL 240.20(6) where no lawful dispersal orders nor meaningful opportunities to disperse were given; 6) use of arrests in lieu of issuing summonses; 7) the use of resources to corral and

20

trap perceived participants in First Amendment assemblies; 8) assigning arrest teams of officers who had not witnesses the conduct alleged, including filling out paperwork and accusatory instruments containing false information and 9) using Police Department Legal Bureau and Criminal Justice Bureau staff during mass arrest processing, claiming that this leads to false information in the arrest paperwork..

Among Plaintiffs' nine theories they leave it to defendants and the Court to parse out where factual support, if any, exists for their individual claims. Several of Plaintiffs' Monell theories appear to have little or no support anywhere within the complaint to render the conspiratorial theories sufficiently pled. Ashcroft, 556 U.S. 663.

Any theories that can be tied to specific factual pleadings are not sufficiently supported to make those broad conspiratorial theories plausible. "[P]laintiffs have neither plausibly alleged that the officers intended to discourage protesting nor explained why, had they intended to do so, they would have arrested only the protesters who [violated the law]." Garcia v. Bloomberg, 865 F. Supp. 2d 478, 492-3 (S.D.N.Y. 2012) (dismissing as implausible plaintiff's broad conspiratorial policy to allegedly deter Occupy Wall Street protests).

Additionally, for each of their nine theories, Plaintiffs have not pled any causal connection between their myriad Monell theories and the injuries they allege. "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of New York, 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting Monell, 436 U.S. at 691, 694). Plaintiffs allege no connection whatsoever between their arrests and the broad policies they allege against defendant City of New York in this case, as they must. "The plaintiffs cannot bridge the gap

between the broad, conspiratorial policy they attribute to the City and the violations that they have plausibly alleged in this case." Garcia, 865 F. Supp. 2d 492.

Several of Plaintiffs' theories are set forth in the sort of bare-bones and conclusory manner that requires their dismissal. Plaintiffs' second theory of municipal liability, relates to the use of force, or use of force reporting policies and practices. (Ex. A, ¶ 140(b).) However, it is unclear beyond the above statement what this allegation purports was improper and far from clear how Plaintiffs support any theory related to it. Additionally Plaintiffs have not suffered actionable claims related to force, and it is unclear at best how this theory is linked to any of the claims they do allege. Similarly, plaintiffs' third through ninth municipal liability theories are implausible and unsupported as pled. (Ex. A, ¶ 140(c)-(i).) These theories discuss a myriad of implausible theories including the adequacy of dispersal orders. However, Plaintiffs do not present any sufficient factual allegations in their Complaint, and certainly nothing to allow the inference that there was a municipal practice so widespread that it amounted to a policy practice, or custom. This is particularly true in light of the recent decision by the Second Circuit and in this District. See Garcia v. Doe, 779 F.3d 84 and Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. 2015) As Plaintiffs have not pled sufficient facts to show an underlying injury, and clearly not one that is related to these theories.

Plaintiffs' municipal liability theories embodies the overbroad conspiratorial theory dismissed in Garcia v. Bloomberg, 865 F. Supp. 2d 492-3. Plaintiffs also present a municipal liability theory that addresses an alleged policy to arrest individuals instead of issuing summonses. Plaintiffs' theory fails as implausible, unrelated to their allegations, and legally untenable regardless. Plaintiffs' present no factual allegations regarding the lack of summons, beyond the fact that they received desk appearance tickets. Plaintiffs hint that this was somehow

directed at political demonstrations and Occupy Wall Street, but provides no support for this claim.   The issuance of Desk Appearance Tickets or summonses is discretionary as a matter of law, Bryant v. City of New York, 404 F.3d 138, and cannot sustain and cannot sustain a claim of a constitutional violation.  Atwater, 532 U.S. 318 (2001).

Further, Plaintiffs' theories of municipal liability state allege that a policy of assigning officers to process multiple arrests and of having the Police Department Legal Bureau and Criminal Justice Bureau assist in mass arrest situations leads to false records.  These theories are set out broadly in the Complaint.  Plaintiffs also present a handful of cases that purportedly challenge some aspect of mass arrest procedures and the most recent case filed.  (Ex. A, ¶ 135.) These cases fail to support this theory, particularly as they do not represent adjudications, but merely allegations that do not consistently relate to the procedure of processing numerous arrestees.  "[C]itation to various lawsuits [is] not probative of the existence of an underlying policy that could be relevant." Jean-Laurent v. Wilkerson, 461 F. App'x 18, 22-23 (2d Cir. 2012);  "The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city  so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a Monell claim." Walker v. City of New York, 2014 U.S. Dist. LEXIS 42272, 6-7 (S.D.N.Y. 2014).  Plaintiffs' theories also fail as implausible when measured against one of several more likely conclusions, e.g. that mass arrests procedures, including assigning multiple arrests to a transporting arresting officer for processing, are necessary to maintain resources at the scene of a disturbance.

Plaintiffs' theories also turn on the allegation that having a mass arrest procedure somehow causes false allegations.  This is supported only by conclusory statements, and as is self-evident, there is no connection between the accuracy of paperwork prepared after a mass

arrest, and the existence of probable cause based on the totality of the facts and circumstances at the time of the arrest.  It would be far more likely that the absence of a procedure to handle mass arrests would lead to difficulties in processing prisoners and potentially prolonged detentions.  In this light, the eighth and ninth municipal liability theories allege only that the Police Department engages in a pattern or practice of falsifying arrest information.  This represents a classically overbroad, and illogical basis for municipal liability.

<u>**CONCLUSION**</u>

For these reasons defendants ask that the Court dismiss Plaintiffs' Amended Complaint with prejudice, and grant such other relief as the Court deems just and proper.

Dated:      New York, New York
           September 11, 2015

                                   ZACHARY CARTER
                                   Corporation Counsel of the City of New York
                                   100 Church Street
                                   New York, New York 10007
                                   (212) 356-2579

                                   By:  _____/s/_____
                                        Lamar Winslow; Joy Anakhu
                                        Assistant Corporation Counsel
                                        Special Federal Litigation Division

To:      The Honorable Edgardo Ramos
           United States District Judge
           Southern District of New York
           500 Pearl Street
           New York, NY 10007

           Gideon Orion Oliver
           277 Broadway, Suite 1501
           New York, NY 10007