USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED:    9-30-2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER ARBUCKLE and JAVIER SORIANO,

Plaintiffs,

- against -

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ("NYPD") CHIEF OF
PATROL JAMES P. HALL, NYPD DEPUTY
COMMISSION OF LEGAL MATTERS ("DCLM")
OFFICER KEVIN O'DONNELL, NYPD CAPTAIN
WILLIAM TAYLOR, NYPD SERGEANT RICKIE
KNAPP, NYPD SERGEANT SALVATORE FERRO,
SHIELD NO. 02819, OFFICER ELISHEBA VERA,
SHIELD NO. 25318, NYPD OFFICER FREDDY
YNOA, SHIELD NO. 18851, and NYPD OFFICER
DENISE PITRE, SHIELD NO. 14589,

Defendants.

**OPINION AND ORDER**

14 Civ. 10248 (ER)

Ramos, D.J.:

     Plaintiffs Alexander Arbuckle ("Arbuckle") and Javier Soriano ("Soriano") (collectively "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for alleged violations of their constitutional rights arising from their participation in an "Occupy Wall Street" protest.  Specifically, Plaintiffs bring claims of (1) false arrest; (2) excessive use of force; (3) First Amendment retaliation; (4) unconstitutional First Amendment time, place, and manner restrictions; (5) malicious prosecution; (6) denial of right to a fair trial; (7) equal protection violations; (8) excessive detention; (9) deprivation of due process; (10) supervisory liability; (11) failure to intervene; and (12) *Monell* liability against the City of New York.[1]  Plaintiffs' First

---

[1] Plaintiffs' original Complaint makes a claim for malicious abuse of process.  Complaint, Doc. 1, ¶¶ 110-114. However, that claim was not alleged in Plaintiffs' Amended Complaint.  *See* First Amended Complaint, Doc. 20.

Amended Complaint ("Amended Complaint") names as defendants the City of New York (the "City"), New York Police Department ("NYPD") Chief of Patrol James P. Hall ("Chief Hall"), NYPD Deputy Commission of Legal Matters Officer Kevin O'Donnell ("Deputy Officer O'Donnell"), NYPD Captain William Taylor ("Captain Taylor"), NYPD Sergeant Rickie Knapp ("Sergeant Knapp"), NYPD Sergeant Salvatore Ferro ("Sergeant Ferro"), Officer Elisheba Vera ("Officer Vera"), NYPD Officer Freddy Ynoa ("Officer Ynoa"), and NYPD Officer Denise Pitre ("Officer Pitre") (collectively "Defendants").  Defendants now move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## I.    FACTUAL BACKGROUND[2]

### A.    Plaintiffs' Arrest

Between the night of December 31, 2011 and the morning of January 1, 2012, Plaintiffs were observing an Occupy Wall Street ("OWS") demonstration in Zuccotti Park.  Amended Complaint ("Am. Compl."), Doc. 20, ¶ 23.[3]  At the time of the incident, Arbuckle was a 21-year-old photography and political science student at New York University, and Plaintiff Soriano was employed as a freelance photographer.  *Id.* ¶¶ 133, 142.  Arbuckle and Soriano allege that they

---

Consequently, the Court finds that the malicious abuse of process claim has been abandoned.  *Ping Tou Bian v. Taylor*, 23 F. App'x 75, 77 (2d Cir. 2001) (holding that a party abandoned a claim by not pleading it in their amended complaint, because the amended complaint superseded the original complaint).

[2] The following facts are drawn from allegations contained in the Complaint, Doc. 20, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Plaintiffs have also submitted with their opposition four exhibits, *see* Doc. 31, which the Court may take judicial notice of, because they are documents filed in court.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)  ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

[3] OWS is a political movement dedicated to addressing grievances including, but not limited to, income inequality.  Am. Compl. ¶ 2.

intended to document OWS protest activity and police responses for publication. *Id.* ¶¶ 24-25, 32.

Between 12:30 a.m. and 2:30 a.m. on January 1, 2012, Plaintiffs followed as some demonstrators marched from lower Manhattan uptown towards the East Village for several miles. *Id.* ¶¶ 26-27. NYPD officers, "including some or all of the Defendants," accompanied and facilitated the demonstration. *Id.* ¶¶ 28-29. As Plaintiffs approached 13th Street and 5th Avenue, NYPD officers on scooters formed a line blocking off the intersection, and trapping Plaintiffs and other demonstrators on the street. *Id.* ¶¶ 33-35. According to Plaintiffs neither Arbuckle nor Soriano were blocking vehicular or pedestrian traffic on 13th Street. *Id.* ¶¶ 73-74. Furthermore, Plaintiffs allege that no orders to disperse were given to any of the protestors. *Id.* ¶¶ 34, 68-72. Plaintiffs allege that Chief Hall and Captain Taylor, amongst the other Defendants, gave "police orders related to the incident," but that those orders did not amount to dispersal orders. *Id.* ¶¶ 67-72.

As Arbuckle approached the line of scooters, a police officer shouted at him, "Up against the wall!" *Id.* ¶ 36. Arbuckle was subsequently placed in plastic flex-cuffs and placed in an NYPD transport vehicle. *Id.* ¶ 37. Meanwhile, Soriano was approached from behind by Deputy Officer O'Donnell and other unidentified NYPD officers, and detained against a wall. *Id.* ¶¶ 40-43. He was then also arrested and placed into a transport vehicle for processing. *See id.* ¶¶ 44-45.

**B.     Processing**

Officer Vera processed Arbuckle's arrest, and Officer Pitre processed Plaintiff Soriano's arrest. *Id.* ¶¶ 76-77. Plaintiffs allege that as part of Officer Vera and Pitre's "mass arrest" processing duties, the Officers met with either Deputy Officer O'Donnell or another supervisor

from the NYPD's Legal Bureau, as well as a supervisor from the NYPD's Criminal Justice

Bureau. *Id.* ¶¶ 81-82.  Plaintiffs claim that as a result of those meetings, Officers Vera and Pitre

filled out NYPD paperwork related to Plaintiffs' arrests that contained false information supplied

by other NYPD officers.  *Id.* ¶ 83.

According to Plaintiffs, Officer Vera identified Officer Ynoa as having assisted in

Arbuckle's arrest, Officer Pitre as having assisted in Arbuckle's arrest processing, and Sergeant

Knapp as the supervisor who oversaw the arrest processing.  *See id.* ¶¶ 86-87, 89, 97.  Officer

Vera also identified Sergeant Ferro as a supervisor on the scene, and claimed that he gave a

lawful order to disperse to the protesters.  *Id.* ¶ 88.  Plaintiffs further allege that Defendant Vera

falsely stated in the "DETAILS" section of Arbuckle's arrest report: "AT TPO AO DID

OBSERVE DEF ON PUBLIC SIDEWALK CAUSING DISRUPTION WITH 2 OTHERS

OBSTRUCTING PEDESTRIAN AND VEHICULAR TRAFFIC.  AO ORDERED TO

DISPERSE DEFT REFUSED AND REAINED [sic] AT LOCATION CAUSING TRAFFIC

JAM."  *Id.* ¶ 91.  Officer Vera also allegedly wrote: "Deft's actions caused others in area to

leave."  *Id.*

Officer Pitre, according to Plaintiffs, identified Captain Taylor as a supervisor on the

scene of Soriano's arrest, and claimed that he also gave a lawful order to disperse to the

protestors.  *Id.* ¶ 98.

After approximately seven hours in police custody, both Plaintiffs were released with a

desk appearance ticket ("DAT").  *Id.* ¶ 99.

**C.    Legal Proceedings**

According to Plaintiffs, Officers Vera and Pitre provided false information to the New

York Country District Attorney's Office (the "DA"), which led to Plaintiffs' prosecutions.  *Id.* ¶

100.  Plaintiffs allege that Officer Vera told the DA, and swore in an accusatory instrument, that she observed Arbuckle and around fifteen other protestors move from the sidewalk to stand in the street and block vehicular traffic.  *Id.* ¶¶ 103, 105.  Plaintiffs allege that those statements were contradicted by Vera's trial testimony, Arbuckle's trial testimony, third-party trial testimony, and video evidence presented at Arbuckle's trial.  *Id.*  ¶¶ 104, 107.

According to Plaintiffs, Vera testified that:  (i) she observed two cars on the street that Plaintiff Arbuckle was blocking, along with a group of protestors; (ii) there were no scooters on 13th street and Fifth Avenue when Arbuckle was arrested; and (iii) that she never saw Arbuckle chanting or holding any signs.  *See id.* ¶¶ 124, 130, 131.  Arbuckle testified that he was on the sidewalk in the minute leading up to his arrest.  *Id.* ¶ 138.  Soriano testified that he was in front of people on the sidewalk before he saw "many police officers blocking the street and arresting people."  *Id.* ¶ 143.  And Ryan Deveraux ("Deveraux"), a witness who was employed by *The Guardian* at the time, testified that traffic was blocked because of the police scooters.  *Id.* ¶ 146.  Plaintiffs further allege that a video of the scene depicted a line of police scooters along Fifth Avenue, which trapped Arbuckle as a "perceived" protestor.  *Id.* ¶ 135.

Based on Officer Vera's false statements, Plaintiffs allege that Arbuckle was charged with violating N.Y. Penal Law § 240.20(5), for obstructing vehicular or pedestrian traffic, and N.Y. Penal Law § 240.20(6), for congregating in a public place and refusing to comply with a lawful order to disperse.  *Id.* ¶ 108.  The prosecutor ultimately dismissed the § 240.20(6) charge, but after at least two court appearances, Arbuckle's case went to trial on the remaining § 240.20(5) charge.  *Id.* ¶¶ 114-117.  After a two day trial, from May 14, 2012 to May 15, 2012, Arbuckle was acquitted of the § 240.20(5) charge.  *Id.* ¶¶ 117, 133-147.

5

Plaintiffs allege that Soriano's criminal case was dismissed after at least three court appearances, "on speedy trial grounds." *Id.* ¶ 148.

## II.     PROCEDURAL HISTORY

Plaintiffs commenced this action on December 31, 2014 against the Defendants claiming: (1) false arrest; (2) excessive use of force; (3) First Amendment retaliation; (4) unconstitutional First Amendment time, place, and manner restrictions; (5) malicious prosecution; (6) denial of right to a fair trial; (7) equal protection violations; (8) excessive detention; (9) deprivation of due process; (10) supervisory liability; (11) failure to intervene; and (12) *Monell* liability against the City of New York.  *See* Compl.  Defendants moved to dismiss the original Complaint under Federal Rule of Civil Procedure 12(b)(6) on September 11, 2015.  Plaintiffs subsequently submitted an Amended Complaint, removing the claim for malicious abuse of process and adding a claim for a violation of equal protection.  *See* Am. Compl. ¶¶ 204-206.  Defendants moved to dismiss the Amended Complaint on November 20, 2015.  Second Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6) ("Mot. to Dismiss"), Doc. 23.

## III.    LEGAL STANDARD

### A.      12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief

that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiffs claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### B.    Liability Under Section 1983

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  Thus, a civil

rights action brought under § 1983 will stand only insofar as a plaintiff can prove an actual

violation of his rights under the Constitution or federal law.  *Id.* (citing *Adickes v. S.H. Kress &*

*Co.,* 398 U.S. 144, 150 (1970)).

Plaintiffs bring claims against Chief Hall, Deputy Officer O'Donnell, Captain Taylor,

Sergeant Knapp, Sergeant Ferro, Officer Vera, Officer Ynoa, and Officer Pitre (collectively the

"Individual Defendants") in their personal capacities.  Personal-capacity suits "seek to impose

individual liability upon a government officer for actions taken under color of state law."  *Hafer*

*v. Melo*, 502 U.S. 21, 25 (1991).  Such suits *must* be premised on a certain level of personal

involvement.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this

Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950

F.2d 880, 885 (2d Cir. 1991)).  "An individual cannot be held liable for damages under § 1983

'merely because he held a high position of authority,' but can be held liable if he was personally

involved in the alleged deprivation."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365

F.3d 107, 127 (2d Cir. 2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).  A

plaintiff can prove personal involvement with evidence that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference…by failing to act on
> information indicating that unconstitutional acts were occurring.

*Id.* (citation omitted); *see also Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

Additionally, "[w]hile the plaintiff in a personal-capacity suit need not establish a connection to

governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses . . . ." *Hafer*, 502 U.S. at 25.

Plaintiffs' constitutional claims against the City are also brought pursuant to 42 U.S.C. § 1983, in accordance with the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). "[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell*, 436 U.S. at 690-91). "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Id.*  Thus, a *Monell* claim is not "a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy . . . .  Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell*, 436 U.S. at 690–91).

A plaintiff can prove the first "policy, custom, or practice" prong in one of four ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). As for the second and third prongs, "Plaintiff must also prove a causal link between the policy, custom or practice and the alleged [constitutional] injury in order to find liability against a municipality." *Id.* at 277 (citing *Batista*, 702 F.2d at 397).

## IV.   DISCUSSION

### A.   False Arrest

False arrest claims brought under Section 1983 are "substantially the same as claims for false arrest . . . under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). "To prove the elements of false arrest under New York law, plaintiff must show:  (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Defendants do not dispute that Plaintiffs have alleged the first three elements. Defs.' Br. at 7-9. Defendants move to dismiss on the grounds that the arresting officers had probable cause to arrest Plaintiffs, or in the alternative, that they are entitled to qualified immunity. *Id.* at 7-9.

#### 1.   Probable Cause

The existence of probable cause constitutes a justification and complete defense to a claim for false arrest. *Pesola v. City of New York*, No. 15 Civ. 1917 (PKC), 2016 WL 1267797, at *4 (S.D.N.Y. Mar. 30, 2016). Where there was no warrant, "the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *United States v. Jones*, 432 F.3d 34, 41 (1st Cir. 2005)).   The test is "objective rather than subjective." *Id.* at 154.   In a large group setting, the police are required to have individualized probable cause to arrest any member of the group.   *Jones v. Parmley,* 465 F.3d 46 (2d Cir. 2006); *Dinler v. City of New York*, No. 04 Civ. 7921 (RJS), 2012 WL 4513352, at **3-4 (S.D.N.Y. Sept. 30, 2012).

Defendants contend that the police had probable cause to arrest Plaintiffs under N.Y. Penal Law § 240.20(6), because Arbuckle and Soriano disobeyed lawful orders to disperse. Defendants' Memorandum of Law ("Defs.' Br.), Doc. 25, at 7.   Section 240.20(6) of the New York Penal Law provides that a "person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [he] congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."   N.Y. Penal Law § 240.20(6).   "To show that there was probable cause to arrest for a violation of N.Y. Penal Law § 240.20(6), four elements must be established: '(1) defendant congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted 'with intent to cause public inconvenience, annoyance or alarm' or with recklessness to the 'risk thereof.'"   *Pesola*, 2016 WL 1267797, at *4 (citing *United States v. Nelson*, 10 Civ. 414 (PKC), 2011 WL 1327332, at *3 (S.D.N.Y. Mar. 31, 2011) *aff'd*, 500 F. App'x 90 (2d Cir. 2012).   Typically, a determination of probable cause under these circumstances hinges on two factors: "(1) the extent

to which police communicated the orders to the crowd; and (2) whether individuals had an opportunity to comply with the orders." *Yorzinski v. City of New York*, No. 14 Civ. 1302 (GHW), 2016 WL 1270248, at *8 (S.D.N.Y. Mar. 31, 2016); *see also Dinler*, 2012 WL 4513352, at *10 (finding no probable cause because a single dispersal order that was not amplified could not reasonably have been expected to be heard by all of the marchers).  Plaintiffs contend that no dispersal orders were given to either Plaintiff nor to anyone in the crowd that was protesting.  Am. Compl. ¶¶ 34, 68-72.

As a preliminary matter, Defendants claim that Plaintiffs' allegations with regard to the dispersal orders are contradictory between the Complaint and the Amended Complaint.  Defs.' Br. at 3-4.  Defendants assert that because Plaintiffs allege in the original Complaint that dispersal orders *were* given, the Court should disregard Plaintiffs' allegations in the Amended Complaint suggesting otherwise.  Defs.' Br. at 3-4.

Typically, a court disregards prior pleadings, because an amended pleading "completely replaces the original pleading."  *Brooks v. 1st Precinct Police Dep't*, No. 11 Civ. 6070 (MKB), 2014 WL 1875037, at *3 (E.D.N.Y. May 9, 2014); *see also Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08 Civ. 588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012).  However, Courts may make an exception where "a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint."  *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd sub nom. Colliton v. Cravath, Swain & Moore LLP*, 356 F. App'x 535 (2d Cir. 2009) (citation omitted).  Under such circumstances, a court is authorized "to accept the facts described in the original complaint as true."  *Id.*

The Amended Complaint clearly asserts that no orders to disperse were given at the scene of the arrest.  Am. Compl. ¶ 34 ("Police gave no orders to disperse at all prior to forming the line of scooters."); *id.* ¶ 70 ("No police officer gave any 'crowd' perceived to be associated with either plaintiff any dispersal order on 13th Street prior to their arrests."); *id.* ¶¶ 68-69. Defendants claim that the original Complaint, however, concedes that dispersal orders were given.  The Court disagrees.  The allegations that Defendants point to in the original Complaint refer to "*purported* dispersal orders," Compl. ¶ 45, and to officers' claims that such orders were given, *id.* ¶¶ 67, 72.  For example, one allegation in the original Complaint reads:  "When Defendants gave or caused to be given dispersal orders and/or directed and/or supervised and/or otherwise participated in Plaintiffs' arrests, Defendants did not have probable cause to believe that any Plaintiff had committed Disorderly Conduct or any other offense."  *Id.* ¶ 56.  However, this allegation is couched in the alternative, and merely suggests that to the extent Defendants did give dispersal orders, they did not have probable cause.  Thus, while the original Complaint does imply the possibility that dispersal orders were given, the Amended Complaint merely clarifies that such orders were not in fact issued.  Am. Compl. ¶¶ 34, 68-72.  Without a direct contradiction, the Court accepts, for the purposes of the instant motion, the allegations set forth in the Amended Complaint.  *Brooks*, 2014 WL 1875037, at *3.

Considering Plaintiffs' allegations that no dispersal orders were given, the Court cannot conclude that the arresting officers had probable cause at this stage.  *Pesola*, 2016 WL 1267797, at *4; *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 722 (S.D.N.Y. 2015) (refusing to grant a motion dismiss on the basis of probable cause where pleadings do not suggest that plaintiff disobeyed a lawful order).

### 2.      Qualified Immunity

Defendants claim that even if the Court does not find that the arresting officers had probable cause, they are nonetheless entitled to qualified immunity.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014).

Even though qualified immunity is an affirmative defense, it may be asserted in a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure "as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  However, "[a]lthough a qualified immunity defense can be presented in a Rule 12(b)(6) motion, 'the defense faces a formidable hurdle' at this stage in the proceedings." *Griffin v. City of New York*, 880 F. Supp. 2d 384, 403 (E.D.N.Y. 2012) (quoting *McKenna,* 386 F.3d at 434). Qualified immunity, often a fact intensive decision, is better left for summary judgment or for the jury to resolve.  *Birch v. City of New York*, No. 16 Civ. 34 (BMC), 2016 WL 2343848, at *4 (E.D.N.Y. May 3, 2016); *King v. Simpson,* 189 F.3d 284, 286 (2d Cir. 1999) (holding that dismissal of civil rights action on grounds of defendant's absolute and qualified immunity was "premature absent development of record").

Relying solely on the Amended Complaint, Defendants' qualified immunity defense fails. Plaintiffs have not made any allegations suggesting that it was reasonable for the arresting officers to believe that their arrests were lawful.  Rather, Plaintiffs have clearly alleged that no dispersal orders were given, the only basis upon which Defendants claim that the arresting

officers had probable cause.  Therefore, Defendants' motion to dismiss Plaintiffs' claims for false arrest is DENIED.

### B.        Excessive Force

Claims of excessive force must be analyzed through the lens of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989).  In order to prevail, Plaintiffs must allege an officer's actions were objectively unreasonable "in light of the facts and circumstances confronting him or her, without regard to his or her underlying intent or motivation."  *Rincon v. City of New York*, No. 03 Civ. 8276 (LAP), 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005). "The Supreme Court has cautioned that in analyzing excessive force claims, courts must make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"  *Parmley*, 465 F.3d at 61 (quoting *Graham,* 490 U.S. at 397).  Police officers are authorized to use a reasonable amount force in effecting an arrest, and "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Faruki v. City of New York*, 517 F. App'x 1, 2 (2d Cir. 2013).  Plaintiffs have the burden to show that the amount of force used was more than *de minimis*.  *Romano v. Howarth*, 998 F.2d 101, 105 (2d. Cir. 1993).

Plaintiffs do not make any allegations suggesting that the arresting officers used any force outside of detaining Plaintiffs against a wall and placing them in plastic flex-cuffs.[4]

---

[4] Plaintiffs rely on a state court decision, stating that any force used to make an arrest without probable cause is excessive.  *Meagher v. Safir*, 272 A.D.2d 114, 114 (First Dep't 2000), *rev'd on other grounds*, *Kelly v. Safir*, 96 N.Y.2d 32 (2001).  However, the Second Circuit has held that the reasonableness standard established in *Graham* is the applicable test regardless of whether the officers allegedly lacked probable cause to arrest.  *Parmley*, 465 F.3d at 62.

Plaintiffs argue, though, that they were subjected to excessively tight hand-cuffing.  Pls.' Br. at 21.  Courts in this Circuit have a clearly established three prong analysis regarding excessive force claims in connection with handcuffs:  "1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008); *see also Morgan v. City of New York*, No. 12 Civ. 704 (WFK), 2014 WL 3407714, at *5 (E.D.N.Y. July 10, 2014).

Although Plaintiffs allege that Defendants handcuffed them with plastic flex-cuffs, and claim that flex-cuffs generally result in a tighter and more painful cuffing, Am. Compl. ¶¶ 173-174, Plaintiffs fail to make any allegations suggesting that the handcuffs were in fact unreasonably tight, that Plaintiffs gave any notice that the handcuffs were too tight, or that they experienced any injury. Plaintiffs have thus failed to plead that the arresting officers used excessive force.[5]  Consequently, Defendants' motion to dismiss Plaintiffs' excessive force claim is GRANTED.

### C.    First Amendment Retaliation

A First Amendment retaliation claim requires a showing by a Plaintiff of three elements: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  Plaintiffs have alleged that they were documenting the OWS protest in Zuccotti Park.  Am. Compl. ¶ 23.

---

[5] Plaintiffs rely on several cases to suggest that their excessive force claims should nonetheless survive a motion to dismiss.  Those cases are inapposite, however, given that Plaintiffs have made no allegations that the handcuffing resulted in any injury.  *See MacNamara v. City of New York*, 275 F.R.D. 125, 143 (S.D.N.Y. 2011), *Burley v. City of New York*, No. 03 Civ. 735 (WHP), 2005 WL 668789, at *8 (S.D.N.Y. Mar. 23, 2005); *Brown v. City of New York*, 798 F.3d 94, 102-103 (2d Cir. 2015).

Plaintiffs then left the park and followed demonstrators who marched north from the park, before being confronted by police officers.  *Id.* ¶¶ 26-28.  Defendants attack Plaintiffs' retaliation claim by asserting that Plaintiffs have not made any allegations suggesting that their arrest was motivated by their exercise of free speech.  Defs.' Br. at 11.

The Court disagrees.  First, Plaintiffs have clearly alleged that they were engaged in First Amendment protected conduct.  Indeed, regardless of whether Plaintiffs were protestors or not, First Amendment protections extend to "the interests of the audience as well as the speaker." *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y. 2011) (finding that plaintiffs "who were present as observers of a political protest [fell] within the ambit of constitutional protection").  Plaintiffs have alleged they were not only acting as observers, but as photojournalists.  Plaintiffs have therefore satisfied the first prong.

With regard to the second prong, the Court acknowledges that Plaintiffs have not explicitly alleged that their arrest was motivated by their participation in the protest, whether as observers or protestors.  However, courts in this district have found that the proximity in time and location between OWS protests and arrests is sufficient to allege motive by the arresting officers.  *Meyers v. City of New York*, No. 14 Civ. 9142 (ALC), 2015 WL 6503825, at *12 (S.D.N.Y. Oct. 27, 2015) (finding that OWS plaintiffs' "concurrent arrests [in relation to their protected speech] . . . impl[ied] a motivation substantially caused by that speech; *Marom v. City of New York*, No. 15 Civ. 2017 (PKC), 2016 WL 916424, at *11 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court concludes that [the plaintiffs'] allegation that they were 'lawfully present in Liberty Plaza in connection with the six month anniversary of the OWS movement' and were subsequently arrested . . . is adequate to state a retaliatory motive.").  The Court thus finds that

Plaintiffs have sufficiently alleged that the arresting officers were motivated by Plaintiffs' exercise of their right to free speech.

Finally, Plaintiffs have alleged that they suffered concrete harm, in that they were arrested and criminally charged.  Therefore, Defendants' motion to dismiss Plaintiffs' First Amendment retaliation claim is DENIED.[6]

### D.    First Amendment Time, Place, and Manner Restrictions[7]

Plaintiffs also seem to claim that a number of municipal policies imposed impermissible time, place, and manner restrictions on Plaintiffs' speech.  "A statute may unconstitutionally restrict speech in one of two primary ways."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006).  If it restricts speech based on the content of that speech, "it must be narrowly tailored to promote a compelling Government interest."  *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).  "Such content-based restrictions are, almost always, unconstitutional . . . ."  *Field Day, LLC*, 463 F.3d at 174.  If, on the other hand, a statute does not aim to restrict content, but only some action that incidentally restricts the time, place, or manner of speech, it is subject to a "level of judicial scrutiny that varies with the nature of the

---

[6] Defendants argue that the arresting officers had probable cause to arrest Plaintiffs, or in the alternative, qualified immunity.  They assert therefore that Plaintiffs' retaliation claim must be dismissed.  However, for the reasons stated above, Defendants' probable cause and qualified immunity arguments fail, and thus do not bear upon Plaintiffs' retaliation claims.

[7] Plaintiffs argue that dispersal orders and a meaningful opportunity to disperse are required before arresting members of a perceived disorderly First Amendment assembled group, even if there is a clear and present danger to society.  Pls.' Br. at 29.  Plaintiffs refer to the clear and present danger test laid out in *Jones v. Parmley*:  "In the protest context, the Supreme Court has . . . made clear that the police may not interfere with demonstrations unless there is a "clear and present danger" of riot, imminent violence, interference with traffic or other immediate threat to public safety.  *Jones v. Parmley*, 465 F.3d at 57 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 308-309 (1940)).  However, as pointed out by Defendants, the protest in *Parmley* occurred on private property, and for this reason the Second Circuit has explicitly stated that "[*Parmley*] does not stand for the proposition that police officers must provide 'fair warning' before effecting any arrests when individuals are clearly violating an applicable criminal statute."  *Garcia*, 779 F.3d at 94 n.11.

forum in which the speech occurs . . . ."  *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426

F.3d 617, 625 (2d Cir. 2005).

Plaintiffs claim that "the restrictions imposed by [D]efendants on [P]laintiffs' First

Amendment rights complained of herein were":  (1) not content-neutral and not narrowly

tailored to promote a compelling state interest; (2) content-neutral but lacked narrow tailoring to

serve a significant government interest and/or failed to provide ample alternatives for expression;

(3) gave Defendants unbridled discretion to limit or deny Plaintiffs' abilities to engage in

protected conduct; and/or (4) imposed strict liability on Plaintiffs for participating in protected

conduct.  Am. Compl. ¶ 185.

However, Plaintiffs do not specify, either in the Amended Complaint or in their

Opposition, which restrictions they are referring to in connection with their First Amendment

claim.  The Amended Complaint describes a number of municipal policies.  Indeed, in making

their *Monell* claims (discussed below), Plaintiffs list nine different municipal policies that they

claim are unconstitutional.  With respect to Plaintiffs' First Amendment time, place, and manner

claim, however, Plaintiffs have not provided the City with adequate notice of the accusations it

faces.  As a result, the City is prevented from being able to mount an appropriate

defense.  *See Wynder v. McMahon,* 360 F.3d 73, 79 (2d Cir. 2004) ("The key to Rule 8(a)'s

requirements is whether adequate notice is given."); *id.* (defining "fair notice as that which will

enable the adverse party to answer and prepare for trial, allow the application of res judicata, and

identify the nature of the case so that it may be assigned the proper form of trial" (internal

quotations omitted)); *see also Meyers*, 2015 WL 6503825, at *15 ("[T]he City is entitled to know

which of [the polices] is at issue, so that it has a fair opportunity to meet its burden to justify the

regulation or its enforcement as constitutional.")  Accordingly, the Court dismisses Plaintiffs'

time, place, and manner First Amendment claim.

###### E.       Malicious Prosecution

"To establish a claim for malicious prosecution under New York law, the plaintiff must

show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant

lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with

malice, and (4) that the prosecution was terminated in the plaintiff's favor."  *Posr v. Court

Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).

In addition to the elements of malicious prosecution under state law, to prevail under

Section 1983, Plaintiffs must also be able to demonstrate that there was "a sufficient post-

arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v.

New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).  Because the plaintiff's

Fourth Amendment rights must be implicated, the deprivation of liberty must be consistent with

the concept of "seizure."  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).  Thus,

having to attend a few court appearances is insufficient to support a Fourth Amendment

malicious prosecution claim.  *Faruki*, 517 F. App'x at 2; *compare Burg v. Gosselin,* 591 F.3d 95,

101 (2d Cir. 2010) ("[A] pre-arraignment, non-felony summons requiring no more than a later

court appearance does not constitute a Fourth Amendment seizure."), *with Murphy v. Lynn,* 118

F.3d 938, 946 (2d Cir. 1997) (finding that restriction on out-of-state travel and requirement to

appear in court eight times does constitute sufficient deprivation of liberty for Fourth

Amendment purposes).

Soriano's claim for malicious prosecution fails because Plaintiffs only allege that he was

required to make at least three court appearances after his arraignment.  Am. Compl. ¶ 148.  As

described above, these allegations alone are insufficient. *See Faruki*, 517 F. App'x at 2 ("The proceedings against [the plaintiff] placed no restriction on her other than a requirement that she appear in court on two occasions—an insufficient deprivation of liberty to support a Fourth Amendment malicious prosecution claim.").

Arbuckle's claim fails for the same reason as Soriano's. Plaintiffs allege that Arbuckle had to attend two court hearings and a two-day trial. Am. Compl. ¶ 117. But as described above, the requirement to attend court hearings, including for trial, does not automatically equate to a post-arraignment deprivation of liberty. *See Neimann v. Whalen*, 911 F. Supp. 656, 670 (S.D.N.Y. 1996) ("[T]he requirement that plaintiff appear before the court for hearings or trial on the charge against her would not seem, by itself, to constitute the requisite constitutional injury"). In order to show a post-arraignment deprivation of liberty, courts in this Circuit have found it necessary for plaintiffs to allege constraints such as travel restrictions, bail requirements, or incarceration. *See Porat v. Lincoln Towers Cmty. Ass'n*, No. 04 Civ. 3199 (LAP), 2005 WL 646093, at *3 (S.D.N.Y. Mar. 21, 2005), *aff'd*, 464 F.3d 274 (2d Cir. 2006); *Morales v. United States*, 961 F. Supp. 633, 637 (S.D.N.Y. 1997); *Singer*, 63 F.3d at 116.[8] Because Arbuckle and Soriano fail to allege a post-arraignment deprivation of liberty, Defendant's motion to dismiss Plaintiffs' claim for malicious prosecution is GRANTED without prejudice.

### F.    Denial of the Right to a Fair Trial[9]

To establish a claim of denial of the right to a fair trial, Plaintiffs must plausibly plead the following elements: "(1) investigating official (2) fabricates evidence (3) that is likely to

---

[8] The Court notes that while Plaintiffs allege that they spent approximately seven hours in police custody for processing, Am. Compl. ¶ 99, they do not allege that they were ever incarcerated.

[9] The Second Circuit has established that claims for malicious prosecution, based in the Fourth Amendment, and denial of the right to a fair trial, based in the Sixth Amendment, can both be brought in the same suit. *Nibbs v. City of New York*, 800 F. Supp. 2d 574, 576 (S.D.N.Y. 2011) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997)).

influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff

suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149,

152 (2d Cir. 2012).  The Second Circuit has held that "[w]hen a police officer creates false

information likely to influence a jury's decision and forwards that information to prosecutors, he

violates the accused's constitutional right to a fair trial, and the harm occasioned by such an

unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti*

*v. N.Y.C. Transit Auth.*, 124 F.3d, 123, 130 (1997).

 Although some courts have held that a Section 1983 claim for denial of the right to a fair

trial requires that a trial have actually been conducted, the Second Circuit in *Ricciuti* and other

courts in this district have found otherwise.  *See Schiller v. City of New York*, No. 04 Civ. 10178

(RJS) (JCF), 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23, 2008) ("The limiting factor appears to

be not whether the plaintiff went to trial but whether the falsification caused material harm.");

*Canario v. City of New York*, No. 05 Civ. 9343 (LBS), 2006 WL 2015651, at **2-4 (S.D.N.Y.

July 12, 2006).  Thus, in cases where there are allegations that officers fabricated evidence, the

key consideration is whether the fabrication resulted in a deprivation of liberty.

 Plaintiffs claim that "[e]ach plaintiff suffered significant post-arraignment deprivations of

liberty," in that "each plaintiff was required to return to court multiple times."  Am. Compl. ¶

213.  Plaintiffs further claim that the ongoing criminal cases "imposed . . . restrictions . . . on

[P]laintiffs' abilities to travel."  *Id.* ¶ 214.  However, the only example Plaintiffs provide of such

"travel restrictions," is that they were "subjected at all times to the orders and processes of the

Court."  *Id.* ¶ 215.  As stated above, merely having to respond to orders of the court and attend

court hearings is insufficient to allege a deprivation of liberty.  *Compare with Canario*, 2006 WL

2015651, at *1 n.1, *2 (suggesting that had there been allegations to support plaintiff's claim of

fabrication, five days of incarceration would have been sufficient to sustain plaintiff's denial of the right to a fair trial claim).  Consequently, Plaintiffs right to a fair trial claim must be dismissed.

### G.    Equal Protection

Plaintiffs claim that all of the policies alleged in relation to their *Monell* claims, discussed below, violated Plaintiffs' right to equal protection.  Plaintiffs assert that these policies "target[ed] perceived participants in OWS demonstrations."  Am. Compl. ¶ 205.  However, aside from this conclusory statement, Plaintiffs provide no factual allegations in support of their claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient at the pleading stage.  *Iqbal*, 556 U.S. at 663.  Consequently, Plaintiffs' equal protection claim is dismissed.  *See Marom*, 2016 WL 916424, at *13 (dismissing plaintiffs' equal protection claim because "[t]here [was] no non-conclusory allegation that defendants [had] any antipathy toward any aspect of the viewpoint of the OWS protestors").

### H.    Excessive Detention

Plaintiffs claim that they were detained without "lawful excuse or justification for an unreasonable period of time."  Am. Compl. ¶ 208.  "In the context of pretrial detention, the Supreme Court has held that, when there has been a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention."  *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005).  "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement."  *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).  Plaintiffs allege that they were released after spending approximately

seven hours in police custody.  Am. Compl. ¶ 99.  Because Plaintiffs' pre-arraignment detention did not exceed 48-hours, their detention was presumptively reasonable.  *Marom*, 2016 WL 916424, at *8.

There are "extraordinary circumstances" under which a court may find that a detention lasting less than 48 hours was excessive.  *Marom*, 2016 WL 916424, at *8 (quoting *McLaughlin*, 500 U.S. at 56).  These circumstances, set out by the Supreme Court in *County of Riverside v. McLaughlin*, could include "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56.

Plaintiffs argue that such "extraordinary circumstances" apply here.  However, the Amended Complaint merely makes a number of conclusory allegations that track the exact language of *McLaughlin*.   Plaintiffs' claim that their "releases were delayed for the purpose of gathering additional evidence to justify the arrest," were "based on ill-will," and "delayed plaintiffs' releases for delay's sake."  Am. Compl. ¶¶ 208, 266-68.  Because Plaintiff has not offered any factual allegations in support of these claims, the Court finds that Plaintiff has failed to allege that their detention was unreasonable.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' claim of excessive detention.  *See Marom*, 2016 WL 916424, at *8 (dismissing claims of excessive detention where plaintiffs alleged that they had been detained for periods of 30 and 40 hours respectively).

## I.       Personal Involvement of Named Defendants

The rule in this Circuit is that "when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)

(internal citation omitted).  Therefore, "allegations which do not specify individual involvement are insufficient" to state a Section 1983 claim against a state actor.  *Williams v. Young*, 769 F. Supp. 2d 594, 601 (S.D.N.Y. 2011); *see also McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) ("It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" (quoting *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y.1999)).

The Second Circuit has defined personal involvement in two ways: "direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Garnett v. City of New York*, No. 13 Civ. 7083 (GHW), 2014 WL 3950904, at *7 (S.D.N.Y. Aug. 13, 2014) (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)).  If Plaintiffs "establish that one of the supervisory defendants created a policy or custom under which a constitutional deprivation occurred, they 'must also establish that the supervisor's actions were the proximate cause of the [their] constitutional deprivation.'"  *Marom*, 2016 WL 916424, at *16 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014)).  Therefore, "if the constitutional deprivation at issue was not a foreseeable consequence of any alleged policy or custom, or the deprivation was caused by some unforeseeable intervening event, plaintiffs have not stated a plausible claim against a supervisory defendant."  *Id.* (citing *Victory v. Pataki*, No. 13 Civ. 3592, 2016 WL 373869, at *15 (2d Cir. Feb. 1, 2016)).

In assessing personal liability, the Court will only consider Plaintiffs' remaining false arrest claim and First Amendment retaliation claim.  If the Amended Complaint fails to plausibly

allege the personal involvement of the Individual Defendants in each of those claims, those claims must be dismissed as to those particular defendants.

### 1.    False Arrest

Arbuckle brings his claim of false arrest against Chief Hall, Captain Taylor, Deputy Officer O'Donnell, Sergeant Knapp, Officer Ynoa, Officer Vera and/or Sergeant Ferro.  Soriano brings his claim of false arrest against Chief Hall, Captain Taylor, Deputy Officer O'Donnell, Sergeant Knapp, and/or Officer Pitre.  Am. Compl. ¶¶ 169-171.  Simply being present at the scene of an arrest does not suffice for personal involvement.  *Garnett*, 2014 WL 3950904, at *7; *see also Travis v. Vill. of Dobbs Ferry,* 355 F. Supp. 2d 740, 752-53 (S.D.N.Y. 2005).  However, conduct such as ordering that an arrest be made or filling out arrest paperwork can suffice to demonstrate direct participation.  *See Marom*, 2016 WL 916424, at *16.

Plaintiffs allege that Officer Vera arrested Arbuckle and filled out his arrest paperwork.  Am. Compl. ¶¶ 84, 91, 103, 104-106.  Officer Pitre is alleged to have done the same for Soriano.  *Id.* ¶¶ 93, 109-110.  Plaintiffs also allege that Officer Ynoa personally assisted in Arbuckle's arrest.  *Id.* ¶ 86.  Thus, Plaintiffs have sufficiently alleged the personal involvement of Officers Vera, Pitre, and Ynoa in their arrests.

Plaintiffs also claim that the named "Supervisory Defendants" – Chief Hall, Captain Taylor, Sergeant Knapp, and Sergeant Ferro – were personally involved in their false arrests.  Am. Compl. ¶¶ 169-171.  Plaintiffs make a number of broad allegations with regard to the Supervisory Defendants.  They allege that "the Supervisory Defendants directed and/or supervised the other Defendants, and other NYPD officers, with respect to effecting Plaintiffs' arrests and/or processing Plaintiffs' arrests."  *Id.* ¶ 66.  Furthermore, they allege that "[Chief] Hall actually directed and/or supervised Defendants the other Supervisory Defendants' activities

with respect to giving police orders and instructions and/or directing, supervising, or assisting in arrests or arrest processing, including Plaintiffs'." *Id.* ¶ 63.  Finally, Plaintiffs allege that "[Chief] Hall, [Captain] Taylor, and other Supervisory Defendants gave or caused to be given police orders related to the incident and/or directed and/or supervised and/or otherwise participated in Plaintiffs' arrests." *Id.* ¶ 67.

Although these allegations could be read to indicate that some of the Supervisory Defendants ordered the arrests of Plaintiffs, the Court finds that these allegations are too broad and conclusory to sufficiently make out a claim as to any of the Supervisory Defendants.  The allegations are couched in the alternative, and thus do not indicate which of the Supervisory Defendants engaged in what conduct.  Consequently, the allegations could be read to indicate that all or none of the Supervisory Defendants were supervising the actions of others – which would not be sufficient for personal involvement – or they could be read to suggest that all or none of the Supervisory Defendants ordered the arrest of Plaintiffs.  Because these are the only allegations that could be read to implicate Chief Hall and Captain Taylor, the Court finds that Plaintiffs have not plausibly alleged their personal involvement in Plaintiffs' false arrest.

With regard to Sergeant Ferro, Plaintiffs allege that he was identified by Officer Vera as the supervisor on the scene leading up to Arbuckle's arrest.  *Id.* ¶ 88.  However, as stated above, simply witnessing events leading up to an arrest does not amount to personal involvement. *Garnett*, 2014 WL 3950904, at *7.  With regard to Sergeant Knapp, Plaintiffs allege that he was a supervisor who directed and assisted Officer Vera in arrest processing, and that he had a duty to verify the accuracy of Officer Vera's paperwork.  *Id.* ¶ 96.  Plaintiffs further indicate that Officer Vera met with Sergeant Knapp before Vera falsified the arrest paperwork.  *Id.* ¶ 89.  They do not allege, however, that Sergeant Knapp was in any way responsible for the

falsification.  These allegations also are not sufficient to indicate that Sergeant Knapp was personally involved.  While the person who filled out the arrest paperwork presumably had to know the facts that made the arrest illegal, the person who ensured its accuracy did not.  *See Marom*, 2016 WL 916424, at *16-17.

As to Deputy Officer O'Donnell, however, Plaintiffs have sufficiently alleged personal involvement.  Plaintiffs allege that as part of Officer Vera and Officer Pitre's arrest processing duties, they each met with Deputy Officer O'Donnell.  *Id.* ¶ 81.  Furthermore, Plaintiffs allege that as a result of that meeting, Officers Vera and Pitre filled out Plaintiffs' arrest paperwork with false information.  *Id.* ¶ 83.  Therefore, the Court finds that Plaintiffs' allegations permit the inference that Deputy Officer O'Donnell was instrumental in the alleged falsification of Plaintiffs' arrest paperwork.

In summary, the false arrest claims against Chief Hall, Captain Taylor, Sergeant Knapp, and Sergeant Ferro are dismissed.

### 2.      First Amendment Retaliation

First amendment retaliation claims are virtually identical to Plaintiffs' false arrest claims regarding the alleged basis for personal involvement of the Individual Defendants.  *See Marom*, 2016 WL 916424, at *18.  "Because both claims arise from the same factual allegations – defendants arrested [plaintiffs] without probable cause because they were involved in the Occupy Wall Street protest . . . – plaintiffs make identical contentions regarding how the named individual defendants were personally involved in those events."  *Id.*  Therefore, the First Amendment retaliation claims against Chief Hall, Captain Taylor, Sergeant Knapp, and Sergeant Ferro are also dismissed.

### J.       Failure to Intervene

Arbuckle brings a claim for failure to intervene against Chief Hall, Captain Taylor, Deputy Officer O'Donnell, Sergeant Knapp, Officer Ynoa, and Officer Pitre.  Am. Compl. ¶¶ 161-168.  Plaintiff Soriano makes the same claim against Chief Hall, Captain Taylor, Deputy Officer O'Donnell, Sergeant Knapp, Officer Ynoa, Officer Vera and Sergeant Ferro.  *Id.*

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used (2) that a citizen has been unjustifiably arrested or (3) that any constitutional violation has been committed by a law enforcement official."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).  However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  *Id.*

As a preliminary matter, a failure to intervene claim is contingent only on the underlying claim.  *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012).  Accordingly, Plaintiffs' failure to intervene claims will only be assessed with regard to their surviving claims of false arrest and First Amendment retaliation.  *See Feinberg v. City of New York*, 99 Civ. 12127 (RC), 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004).  Furthermore, a defendant "cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop themselves from committing that violation."  *Marom*, 2016 WL 916424, at *19.  Thus, Arbuckle's failure to intervene claims against Deputy Officer O'Donnell and Officer Ynoa must be dismissed, and Soriano's failure to intervene claim against Deputy Officer O'Donnell must also be dismissed.

As to Chief Hall, Plaintiffs do not allege that Hall was actually present during either Plaintiffs' arrest or processing.  Therefore, Plaintiffs have not plausibly alleged that Hall had a

realistic opportunity to intervene with respect to either Arbuckle or Soriano.  Similarly, both Arbuckle and Soriano's failure to intervene claims fail with respect to Sergeant Knapp. Plaintiffs allege that Officer Vera met with Sergeant Knapp, but make no allegations suggesting Sergeant Knapp could have known of any wrongdoing, and thus could have intervened.  *Id.* ¶¶ 89, 96-97.  Plaintiffs also make no allegations suggesting that Sergeant Knapp was present during Soriano's arrest or processing.

With regard to Sergeant Ferro, Plaintiffs make no allegations suggesting that he was present during Soriano's arrest or processing.  Furthermore, Plaintiffs make no allegations that Officer Ynoa was present during Soriano's arrest or processing.

Plaintiffs have plausibly alleged that Officer Pitre had an opportunity to intervene and prevent Arbuckle's false arrest.[10]  Plaintiffs allege that Officer Vera identified Officer Pitre as having assisted in Arbuckle's arrest processing.  Furthermore, Plaintiffs allege that Captain Taylor was a supervisor on the scene and a witness to the circumstances leading up to Soriano's arrest.  *Id.* ¶ 98.  Thus, the Court finds that Plaintiffs have plausibly alleged that Taylor had a realistic opportunity to prevent Soriano's false arrest.  This is not the case with regard to Arbuckle's claim against Captain Taylor, as there are no allegations that Captain Taylor witnessed Arbuckle's arrest or processing.

Finally, Plaintiffs have failed to plausibly allege that Officer Vera had an opportunity to intervene with respect to Soriano.  Although Plaintiffs allege that Officers Vera and Pitre met with a supervisor from the NYPD's Criminal Justice Bureau, and that those meetings resulted in the falsification of Plaintiffs paperwork, there is no indication that Officers Vera and Pitre met

---

[10] Plaintiffs do not allege that Officer Pitre was personally responsible for Arbuckle's false arrest.  Consequently, they are not barred from bringing a failure to intervene claim against her.

with the supervisor together.  Thus, the Court cannot plausibly infer that Officer Vera had an opportunity to prevent Officer Pitre's falsification of Soriano's arrest paperwork.

To summarize, Arbuckle's failure to intervene claim survives only with respect to Officer Pitre, and Soriano's failure to intervene claim survives only with respect to Captain Taylor.  The remaining failure to intervene claims are dismissed.

### K.    *Monell* Claims

Plaintiffs assert that the City of New York is also liable for the deprivation of their constitutional rights.  "In order to establish municipal liability, 'a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.'"  *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991)).  A municipality may not be held liable for a Section 1983 claim solely "by application of the doctrine of *respondeat superior*."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986).  Rather, municipal liability is found where:  (1) "a particular municipal action *itself* violates federal law, or directs an employee to do so," *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original), (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," *Id.* at 405, (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), and (4) where a municipality's failure to train its employees about their legal duty to avoid violating a citizen's rights amounts to "deliberate indifference," *Id.*  Under any of these theories, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bryan Cty.*, 520 U.S. at 404.

To succeed in plausibly alleging a claim for municipal liability against the City of New York, the Amended Complaint must demonstrate a "direct causal link between" a municipal action and one of Plaintiffs' surviving claims of false arrest or First Amendment retaliation. Plaintiffs list nine potential policies and practices of the City of New York that they believe are bases for municipal liability, Am. Compl. ¶ 221, in addition to a claim that the City has failed to properly train its police officers.  The Court first addresses the alleged municipal policies, and then the failure to train theory.

When alleging a *Monell* claim based on the existence of a municipal policy or practice, plaintiffs must show that the practice causing the deprivation of federal rights is "so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61.  Generally, "a single incident alleged in a complaint, especially if it involved only actors below the policy making level, does not suffice to show a municipal policy."  *DeCarlo*, 141 F.3d at 61.  "[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (alterations omitted) (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)).  The policies that Plaintiffs claim were responsible for the deprivation of their constitutional rights include:

- The policy and practice of failing to ensure that constitutionally meaningful and adequate dispersal orders and opportunities to disperse are given prior to effecting arrests in connection with First Amendment assemblies;

- The NYPD's use of force and use of force reporting policies and practices;

- The policy and practice of treating perceived 'groups' of people as a 'unit' for 'mass arrest' probable cause determination purposes without ensuring that lawfully authorized and constitutionally significant notice, and a meaningful opportunity to disperse, were given and disregarded prior to treating the perceived 'group' as a 'unit';

- The policy and practice of applying PL § 240.20(5) (Disorderly Conduct – Blocking Pedestrian or Vehicular Traffic) in circumstances where there is no lawful authority to arrest or detain perceived 'groups' of people;

- The policy and practice of applying PL § 240.20(6) (Disorderly Conduct – Failure to Obey Lawful Dispersal Order) in circumstances where neither lawful dispersal orders, nor meaningful opportunities to disperse, were in fact given;

- The use of arrests in lieu of issuing summonses for summons-eligible offenses;

- The use of police resources to corral and trap perceived particpants in First Amendment assemblies;

- The policy and practice of assigning 'arrest teams' of officers who had not witnessed the conduct allegedly giving rise to the need for arrests to 'process' the arrests of multiple arrestees, including by filling out NYPD paperwork and swearing out accusatory instruments containing false information; and

- The policy and practice of inserting NYPD Legal Bureau and Criminal Justice Bureau agents into a special Mass Arrest Processing Plan using a centralized Mass Arrest Processing Center that manufactured false business and court records after the fact designed to give the impression that assigned arresting officers witnessed or knew things they had not, in fact, witness or known of."

Am. Compl. ¶ 221.

The Court first notes that three of the alleged municipal policies bear no direct causal link to the constitutional deprivations implicated in the surviving claims.  First, the alleged practice of using "arrests in lieu of issuing summonses for summons-eligible offenses," has no connection to Plaintiffs being arrested without probable cause, or in retaliation for their speech.  That alleged practice is possibly related to Plaintiffs' excessive detention claims, but those have been dismissed.

Second, the alleged practice of "assigning 'arrest teams' of officers who had not witnessed the conduct allegedly giving rise to the need for arrests to 'process' the arrests of multiple arrestees, including by filing out NYPD paperwork and swearing out accusatory instruments containing false information," may relate to Plaintiffs' malicious abuse of process or

33

right to a fair trial claims, given the implication that materials were regularly falsified, but neither of those underlying claims has survived Defendants' motion to dismiss.

Third, the alleged practice of "inserting NYPD Legal Bureau and CJB agents into a special Mass Arrest Processing Plan using a centralized Mass Arrest Processing Center that manufactured false business and court records after the fact," may similarly relate to Plaintiffs' dismissed malicious abuse of process and fair trial claims, but it again has no plausible causal link to the surviving claims.

In contrast, the remaining six alleged policies bear some plausible connection to Plaintiffs' surviving claims, in that they could be construed to regularly lead to false arrests. However, for each of these policies, Plaintiffs fail to allege sufficient facts allowing for the plausible inference that any one of them was "so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Plaintiffs allege that these policies were "persistent and widespread" on the basis of purported connections to the events of prior demonstrations. For example, the Amended Complaint includes allegations that, during the RNC protests in 2004 the City's "crowd and disorder control planning" and "mass arrest and mass arrest processing plans" led to mass arrests, a failure to make individualized probable cause determinations, and excessive force. Am. Compl. ¶ 232. The Amended Complaint also haphazardly lists a number of lawsuits brought against the City for actions arising from other protests. *Id.* ¶ 222. However, as the district court found in *Marom* under almost identical circumstances, Plaintiffs have failed to assert which – if any – of those lawsuits led to findings of liability against the City for false arrests or First Amendment retaliatory arrests. 2006 WL 916424, at *21.[11]

---

[11] Indeed, only one of the referenced cases appears to have led to a finding of guilt or liability:  a conviction of a police officer for falsifying police records. Am. Compl. ¶ 222-h (citing *People v. Pogan*, 06416-2008 (Sup. Ct. N.Y. Co.)).

Plaintiffs also fail to specifically connect any of the mentioned lawsuits or the RNC allegations to the specific policies and practices they allege in their *Monell* claims here. The Court thus finds that Plaintiffs have failed to provide sufficient factual allegations to demonstrate, even circumstantially, the existence of municipal policies that were responsible for Plaintiffs' constitutional violations. Furthermore, because Plaintiffs rely on the same evidence to support their claim that the City failed to properly train its officers, the Court finds that Plaintiffs' failure to train claim also fails.

## V.   CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss with respect to all claims, with the exception of the following:

- Plaintiffs' false arrest claim as against Deputy Officer O'Donnell, Officer Vera, Officer Ynoa, and Officer Pitre;

- Plaintiffs' First Amendment retaliation claim as against Deputy Officer O'Donnell, Officer Vera, Officer Ynoa, and Officer Pitre;

- Arbuckle's failure to intervene claim as against Officer Pitre; and

- Soriano's failure to intervene claim as against Captain Taylor.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 17, 23. The parties are directed to appear for a status conference on **October 13, 2016 at 10:00 AM**.

It is SO ORDERED.


Dated: September 30, 2016
       New York, New York

_____
Edgardo Ramos, U.S.D.J.