UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDER ARBUCKLE and JAVIER SORIANO,

                                        Plaintiffs,

           -v-

THE CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT ("NYPD") CHIEF OF
PATROL JAMES P. HALL; NYPD DEPUTY
COMMISSIONER OF LEGAL MATTERS
("DCLM") OFFICER KEVIN O'DONNELL; NYPD
CAPTAIN WILLIAM TAYLOR; NYPD SERGEANT
RICKIE KNAPP; NYPD SERGEANT SALVATORE
FERRO, SHIELD NO. 02819, NYPD OFFICER
ELISHEBA VERA, SHIELD NO. 25318; NYPD
OFFICER FREDDY YNOA, SHIELD NO. 18851;
and NYPD OFFICER DENISE PITRE, SHIELD
NO. 14589,

                                        Defendants.

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
MOTION FOR
RECONSIDERATION OF THIS
COURT'S SEPTEMBER 30, 2016
ORDER (DKT. NO. 34)**


**Index No.  14-cv-10248 (ER)**

**ECF CASE**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
RECONSIDERATION OF THIS COURT'S SEPTEMBER 30, 2016 ORDER
(DKT. NO. 34)**

Gideon Orion Oliver
*Attorney for Plaintiffs*
277 Broadway, Suite 1501
New York, NY  10007
646-263-3495

## TABLE OF CONTENTS

I.      <u>The Court Should Reconsider The Decision To Dismiss Plaintiff's Fair Trial Rights Claims (Decision, pp. 21-23)</u>…………………………………...1

II.     <u>The Court Should Reconsider The Decision to Dismiss Plaintiffs' Malicious Prosecution Claims (Decision, pp. 20-21)</u>………………….......7

III.    <u>The Court Should Reconsider The Decision Dismissing Plaintiffs' First Amendment-Based Time/Place/Manner-based, and Related, Claims (Decision, pp. 18-2)</u>………………………………………………………12

    a.  **The pleadings in the FAC related to Plaintiffs' arrests give Defendants adequate notice that Plaintiffs' arrests for purportedly violating PL 240.20(5) and PL 240.20(6), which occurred in the course of their documenting an OWS protest and police response thereto, were "restrictions" on their protected conduct and speech, which, as applied, prevented them from observing, recording, and disseminating information about police misconduct**………………15

<u>CONCLUSION</u>………………………………………………………………………25

## TABLE OF AUTHORITIES

## CASES

*Abdell v. City of New York*, 2008 WL 2540813 (SDNY June 25, 2008)……………………....18

*Adams v. City of New York*, No. 15CV6741 (DLC), 2016 WL 1169520
    (S.D.N.Y. Mar. 22, 2016)……………………………………………………………25

*Akinnagbe v. City of New York*, 14-civ.-6147 (BMC), 2015 WL 5124456
    (SDNY Sept. 1, 2015)…………………………………………………….…..13, 25
.
*Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)………….........……..19

*Black v. Codd*, 73 Civ. 5283 (JMC) (SDNY, June 1, 1977)…………………………………….…22

*Brown v. City of New* York, 798 F.3d 94 (2d Cir. 2015)…………………………………………..24

*Buie v. City of New York*, No. 12 CV 4390 (RJD) (CLP), 2015 WL 6620230
    (E.D.N.Y. Oct. 30, 2015)………………………..…………………………….…3

*Caravalho v. City of New York*, 13-cv-4174 (PKC)(MHD), 2016 WL 1274575
    (SDNY Mar. 31, 2016) …………………………………………………………14

*Dallas Pesola v. City of New York*, No. 15 Civ. 1917 (PKC), 2016 WL 1267797
    (SDNY Mar. 30, 2016)… ……………………………………………………....25

*De Michele v. City of New York,* No. 09 CIV. 9334 (PGG), 2012 WL 4354763
    (S.D.N.Y. Sept. 24, 2012)….. …………………………………………………24

*Demosthene v. City of New York*, No. 14 CV 816 (SJ) (VMS), 2015 WL 5093116
    (E.D.N.Y. June 26, 2015)… ……………………………………………………5

*Demosthene v. City of New York*, No. 14 CV 816 (SJ) (VMS), No. 14 CV 816 (SJ) (VMS),
    2015 WL 5093164 (E.D.N.Y. Aug. 28, 2015)… ……………………………..5

*Dinler, et al. v. City of New York,* 04 Civ. 7921 (RJS) (JCF), 2012 WL 4513352
    (SDNY Sept. 30, 2012)…… …………………………………………………18-19

*Dowling v. City of New York,* No. 11 CV 4954 (NGG)(RML), 2013 WL 5502867
    (E.D.N.Y. Sept. 30, 2013)…… …………………………………………………..5

*Evans v. City of New York*, 12-cv-5341 (MKB)(VMS), 2015 WL 1345473
    (EDNY Mar. 25, 2015)… ……………………………………………………2, 8

*Faruki v. City of New York*, 517 F. App'x 1 (2nd Cir. 2013)… ……………………………8, 11

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)… …………………………………19, 21

*Garnett v. Undercover Officer CO309,* 2015 WL 1539044 (SDNY April 6, 2015).. …………….,3

*Garnett v. UC COO39,* ___ F.3d ____, 2016 WL 5496761 (2nd Cir. Sept. 30, 2016)……2-3, 6

*Genia v. Parker*, No 03-CV-0870, 2007 U.S. Dist. LEXIS 19700
(E.D.N.Y. Mar. 20, 2007)……. …………………………………………………10

*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)… ………………………………………..19, 21

*Gonzalez v. City of New York*, 14-civ. 7721 (LGS), 2015 WL 6873451
(SDNY Nov. 9, 2015)…………………………………………………13

*Higginbotham v. City of New York*, No. 14-cv-8549 (PKC), 2015 WL 2212242
(SDNY May 12, 2015)… …………………………………………………19, 21

*Jean-Laurent v. Bowman*, No. 12 Civ 2954 (JAM)(LB), 2014 WL 4662221 (July 7, 2014)…..2

*Jean-Laurent v. Bowman*, No. 12 Civ 2954 (JAM)(LB), 2014 WL 4662232
(EDNY Sept. 18, 2014)… …………………………………………………….3

*Jenkins v. Victor Charles, et al.*, 1:13-cv-03405 (KPF) (SDNY), Dkt. 90 (November 14, 2015
Order)……24

*Jocks v. Tavernier,* 316 F.3d 128 (2d Cir.2003) ………………………………..……3-4

*Jovanovic v. City of New York*, 486 F. App'x 149 (2nd Cir. 2012)…………………………...1, 3-4, 8

*Keller v. Sobolewski*, No. 10-CV-5198 FB RML, 2012 WL 4863228
(E.D.N.Y. Oct. 12, 2012)… …………………………………………………5

*Kirk v. Metropolitan Transp. Auth.*, 99-CV-3787, 2001 U.S. Dist. LEXIS 2786
(S.D.N.Y. March 19, 2001) …………………………………………………..9

*MacNamara, et al. v. City of New York*, 04 Civ. 9216, 275 F.R.D. 125 (May 19, 2011)
(SDNY) (RJS) (JCF) …………………………………………………18-19

*Marom v. City of New York*, No. 15 Civ. 2017 (PKC), 2016 WL 916424
(SDNY Mar. 7, 2016)……. ………………………………………………...2

*Marom v. City of New York*, No. 15 Civ. 2017 (PKC), 2016 WL 5900217
(SDNY July 29, 2016)…… …………………………………………………….2

*Martinez v. Gayson*, 95-CV-3788, 1998 U.S. Dist. LEXIS 12281
(E.D.N.Y. June 30, 1998)… ……………………………………………....10

*Morse v. Fusto*, 07-cv-4793 (CBA)(RML), 2013 WL 4647603 (EDNY Aug. 29, 2013)………..6

*Morse v. Fusto*, ___ F.3d ___, 2015 WL 5294862, (2nd Cir. Sept. 11, 2015) ……………….2, 6

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997)……………………………………...........9-10

*Nnodimele v. Derienzo*, No. 13CV3461 (ARR)(RLM), 2016 WL 337751
        (E.D.N.Y. Jan. 27, 2016)…………………………,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,…………,,,,…4-6

*Nogbou v. Mayrose*, 400 Fed.Appx. 617 (2nd Cir. 2010)…………………………………….8

*People v. Galpern*, 259 N.Y. 279 (1932)……………………………......……………………..25

*People v. Jones*, 9 NY3d 259 (2007)….. ….…..….…..….…..…..……………..….…..…..….15

*People v. Reed*, 19 Misc.2d 217 (N.Y.City Crim. Ct., 2008) …………..…..……………..….25

*People v. Taylor*, 19 Misc. 3d 1114(A), 859 N.Y.S.2d 906 (Crim. Ct. 2008)…………………..25

*People v. Todaro*, 26 N.Y.2d 325 (1970)……………………………………………………25

*Perez v. Duran*, 962 F.Sup.2d 533 (SDNY 2013) (JGK) ………………….…..2, 5, 8, 10-11

*Peterec v. Hilliard*, No. 12 Civ. 3944 (CS), 2013 WL 5178328 (SDNY Sept. 16, 2013)…..….10

*Porat v. Lincoln Towers Community Ass'n*, 2005 WL 646093 (SDNY Mar. 21, 2005)………….11

*Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274 (2nd Cir. 2006)…………………….11

*Ricciuti v. NY City Transit Authority*, 124 F.3d 123 (2nd Cir. 1997) …………………..….3-4

*Rohman v. New York City Trans. Auth.,* 215 F.3d 208 (2d Cir. 2000)……………………....9-10

*Rucks v. City of New York*, 96 F.Supp.3d 138 (SDNY March 30, 2015) (KPF)……………..3

*Schiller, et al. v. City of New York, et al.,* 04 Civ. 7922 (RJS)(JCF),
        2008 WL 200021 (SDNY January 23, 2008)… ……………………………..6, 17-18

*Schiller v. City of New York*, 2009 WL 497580 (SDNY, Feb. 27, 2009)……………………..18

*Shamir v. City of New York*, 804 F.3d 553 (2d Cir. 2015)……………….…..……...14, 16, 19

*Smith v. Cumming*, 212 F.3d 1332 (11th Cir. 2000)…………………………………....19, 21

*Smith v. City of New York*, 2015 WL 4643725 (S.D.N.Y. 2015);……………………………..24

*Soomro v. City of New York*, No. 13CV0187 (LTS), 2016 WL 1266069
        (S.D.N.Y. Mar. 30, 2016) …………………………………………………………....3

*Swartz v. Insogna*, 704 F.3d 105 (2nd Cir. 2013)… …………………………………………9-10

*Tennessee v. Garner*, 471 U.S. 1 (1985)…. ………………………………………………24

*Tonge v. Kelly*, 19993 WL 16121 (EDNY, 1993)…… …………………………………....23

*United States v. Agurs*, 427 U.S. 97 (1976)…… ……………………………………………4

*United States. v. Nelson*, 10 Civ. 414 (PKC), 2011 WL 1327332 (SDNY Mar. 31, 2011)…….25

*United States v. Nelson*, 500 Fed. Appx. 90 (2nd Cir. 2012)…………………….………..25

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000)……………..…..12

*von Bulow by Auersperg v. von Bulow*, 811 F.2d 136 (2nd Cir. 1987)………………………19

*Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008)………………………………………..24

*Willner v. Town of North Hempstead*, 977 F. Supp. 182 (E.D.N.Y. 1997)………………...…10

*Zahrey v. Coffey* ,221 F.3d 342 (2nd Cir. 2000)………………………………………...5-6

*Zalaski v. City of Hartford*, 723 F.3d 382 (2nd Cir. 2013)……………………………………13

## FEDERAL STATUTES

Fed.R.Civ.P. 8(a)……………………….........................................................12, 14, 24

Fed.R.Civ.P. 8(a)(2)……………………............................................................. 14

Fed.R.Civ.P. 8(e)……………………….........................................................14

## NEW YORK STATE LAWS

N.Y. Civ. Rights Law § 79-h(b) …………………………………………………………..20

New York Criminal Procedure Law ("CPL") § 510.40…………………….……..2, 5, 9-11

New York Penal Law ("PL") § 240.20(5) …………………….................. 15, 17-19, 24-25

PL § 240.20(6) …………………….............................................. …15, 17-19, 24-25

P.L. § 195.05……………………………………………………………………………22-23

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION**

In a Memorandum and Order dated September 30, 2016 (Dkt. No. 34, the "Order"
or the "Decision"), over Plaintiffs' opposition (*see* Plaintiffs' Memorandum of Law in
Opposition to Defendants' Motion to Dismiss (Dkt. No. 30, "Plaintiffs' MOL"), the Court
dismissed certain claims as pleaded in the First Amended Complaint (Dkt. No. 20, the
"FAC"). Plaintiffs hereby respectfully request that the Court reconsider pp. 18-23 of the
Order, dismissing Plaintiffs' fair trial rights, malicious prosecution, and First Amendment
claims, other than those based in a retaliation theory. Plaintiffs make this application
consistent with and mindful of the requirements in Fed.R.Civ.P. 60(b) and Local Civil Rule
6.3.

**I.      The Court Should Reconsider The Decision To Dismiss Plaintiff's Fair
         Trial Rights Claims (Decision, pp. 21-23)**

The Court dismissed Plaintiffs' fair trail rights claims, citing, *inter alia*, *Jovanovic v. City
of New York*, 486 F. App'x 149, 152 (2ⁿᵈ Cir. 2012) (summary order), for the proposition that,
"where there are allegations that officers fabricated evidence, the key consideration is
whether the fabrication resulted in a deprivation of liberty." Decision at p. 22. The Court
further held that "…in cases where there are allegations that officers fabricated evidence, the
key consideration is whether the fabrication resulted in deprivation of liberty." *Id.* The Court
then cited to the allegations in Paragraphs 213-215 of the FAC and ultimately held that
"merely having to respond to orders of the court and attend court hearings is insufficient to
allege a deprivation of liberty." *Id.*  The Court pointed out that Plaintiffs had not given

"examples" in the pleading of "travel restrictions" aside from being "subjected at all times to the orders and processes of the court." *Id.*[1]

Preliminarily, although the Decision cites *Marom v. City of New York*, No. 15 Civ. 2017 (PKC), 2016 WL 916424, at * 11 (SDNY Mar. 7, 2016) (*"Marom I"*), Judge Castel reconsidered certain key aspects of *Marom I*, including its dismissal of the *Marom* plaintiffs' fair trial rights claims, on July 29, 2016, reinstating those claims in that case, where the FAC only pleaded "numerous court appearances" after which criminal charges were "eventually" dismissed. *See* 2016 WL 5900217 (SDNY July 29, 2016) (*"Marom II"*).[2]

Next, Plaintiffs respectfully submit that, as the Second Circuit recently made clear in *Garnett v. UC COO39*, ___ F.3d ____, 2016 WL 5496761 (2nd Cir. Sept. 30, 2016) ("*Garnett III*"), it would be error to conflate the type of liberty deprivation required to make out a Fourth Amendment-based malicious prosecution claim, namely, a deprivation of liberty that would amount to a seizure under the Fourth Amendment, with the type of injury required to make out a damages claim under 42 USC 1983 for a fair trial rights violation, whichever constitutional provision that claim is construed as based in[3]. Through fair trial rights claims, unlike through Fourth Amendment-based malicious prosecution claims, a plaintiff may seek

---

[1]      As seen in Point II below, the Second Circuit has recognized the restrictions on travel that are placed on a defendant who is arraigned on a misdemeanor or felony complaint and released on their own recognizance pursuant to New York Criminal Procedure Law ("CPL") § 510.40 alone have been "seized" within the meaning of the Fourth Amendment, for purposes of establishing a malicious prosecution claim. *See, e.g., Perez v. Duran*, 962 F.Supp.2d 533, 541-542 (SDNY 2013) (JGK) (discussed below); *Evans v. City of New York*, 12-cv-5341 (MKB)(VMS), 2015 WL 1345473, *6, *50-51 (EDNY Mar. 25, 2015) (discussed below). CPL § 510.40(2) provides that "Upon ordering that a principal be released on his own recognizance, the court must direct him to appear in the criminal action or proceeding involved whenever his attendance may be required and to render himself at all times amenable to the orders and processes of the court."

[2]      *See also* First Amended Complaint in *Marom*, No. 15 Civ. 2017 (PKC), Docket Entry No. 21, at Paragraphs 155, 173, 194, and 207 (pleading "numerous court appearances" after which criminal charges were "eventually" dismissed).

[3]      As the Second Circuit has recently re-emphasized, whichever constitutional provision the injuries are analyzed under, "the constitutional harm resulting from the falsified information at issue is in resulting from the falsified information at issue is in any event redressable in an action for damages under 42 USC 1983." *Garnett III*, 2016 WL 5496761, at *9, n. 6 and n.7, and *10-11; *see also Morse v. Fusto*, ___ F.3d _____, 2015 WL 5294862 at *6, n. 7 (2nd Cir. Sept. 11, 2015); *Jean-Laurent v. Bowman*, No. 12 Civ. 2954 (JAM)(LB), 2014 WL 4662221, at *12 (July 7, 2014).

damages related to a broader set of harms, *see, e.g., Garnett III*, 2016 WL 5496761, at *11, in connection with which probable cause is not a defense, *see, e.g., Garnett III*, 2016 WL 5496761, at *10[4], and qualified immunity is generally not available, *Garnett III*, 2016 WL 5496761, at *8.

As seen below, consistent with *Garnett* III, Second Circuit precedent[5], and decisions interpreting it, hold that a fair trial rights claim accrues when false information is forwarded to prosecutors, resulting in harm to life, liberty, or property – separate and distinct from the type of liberty deprivation required to constitute a seizure sufficient to trigger a Fourth Amendment violation. *See, e.g., Garnett III*, 2016 WL 5496761, at *11 (citing *Ricciuti v. New York City Transit Authority*, 134 F.3d 123, 130 (2nd Cir. 1997) and *Jocks v. Tavernier*, 316 F.3d 128, 138 (2nd Cir. 2003).

In *Ricciuti,* the Second Circuit held that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. Section 1983." 134 F.3d at 130; *see also Jocks*, 316 F.3d at 138.

*Garnett III* not only reaffirmed that central holding of *Ricciuti*, *see, e.g., Garnett III*, 2016 WL 5496761, at *1, *7-8 – it also read *Ricciuti* in a manner consonant with a chorus of

---

[4]      "[U]sing probable cause as a shield would unduly limit an arrestee's right to relief when a police officer fabricates evidence. Because probable cause is no defense to a denial of the right to a fair claim, fair trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims."

[5]      Notably, in *Garnett III,* the Second Circuit points out that the Defendants' reliance on *Jovanovic*, "a no-precedential summary order," is "misplaced" and that *Jovanovic* "neither purports to decide any new point of law nor claims to constrict or revise the holding of *Ricciuti*" at 124 F.3d at 130. *Garnett III*, 2016 WL 5496761 at *8-9 (noting that the formulation from *Jovanovic* "is derived from" this very same "language in *Ricciuti*"); *see also Garnett v. UC C0039*, 13-cv-7083 (GHW), 2015 WL 1539044, at *4-5 (SDNY April 6, 2015) ("*Garnett II*") ("The Second Circuit's rules make it clear that unpublished summary orders – such as that in *Jovanovic* – have no precedential effect. Under the Second Circuit's rules, as stated in the heading of the Circuit's summary orders deciding appeals, 'RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT'" (citing 2nd Cir. Local R. 32.1.1(a)).

district court decisions taking a broader view of the extent of harm that can substantiate a fair trial rights claim than it appears this Court did in the Decision[6], helpfully clarifying that "the standard in *Ricciuti* restricts fair trial claims based on fabrication of information to those cases in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (4) **the plaintiff suffers a deprivation of life, liberty, or property as a result**," *Garnett III*, 2016 WL 5496761, at *11 (emphasis added), citing *Riccitui*, 134 F.3d at 130, and *Jocks*, 316 F.3d at 138.

The Second Circuit's more inclusive "life, liberty, or property" language included in *Garnett III* should put to rest any question as to whether fair trial rights claims must be based on a "seizure" sufficient to count as a deprivation of liberty under the Fourth Amendment. For example, in addition to the obviously more expansive concept of what may count as a "liberty" deprivation, a person may be deprived of "property" as a result of the requirements attendant with ROR release and obligations to appear in connection with their criminal prosecution, for example in the form of lost wages or other similar deprviations.

In *Nnodimele v. Derienzo*, No. 13CV3461 (ARR)(RLM), 2016 WL 337751, at *12-13 (E.D.N.Y. Jan. 27, 2016), Judge Ross analyzed the "constitutional underpinnings of a fair trial claim" as follows:

> An officer violates an accused's right to a fair trial "[w]hen [he] creates false information likely to influence a jury's decision and forwards that

---

[6]      *See, e.g., Rucks v. City of New York*, 96 F.Supp.3d 138, 148-50 (SDNY March 30, 2015) (KPF); *Jean-Laurent v. Bowman*, No. 12 Civ. 2954 (JAM)(LB), 2014 WL 4662232, at *3 n. 1 (EDNY Sept. 18, 2014) ("*Jean-Laurent II*") (finding that, under *Jovanovic*, a "[p]laintiff … has demonstrated a material factual issue as to the causation element – i.e., that … that [a civil defendant's] alleged fabrication of evidence led to his **brief pre-trial detention**") (emphasis added), *cited in Rucks*, 96 F.Supp.3d at 150 and *Buie v. City of New York*, No. 12 CV 4390 (RJD) (CLP), 2015 WL 6620230, at *1, 10 (E.D.N.Y. Oct. 30, 2015) ("Plaintiff was **kept overnight and arraigned the next day**…but accepted an adjournment in contemplation of dismissal); *see also Soomro v. City of New York*, No. 13-cv-0187 (LTS) _____ F.Supp.3d _____, 2016 WL 1266069, at *6 (March 30, 2016) (emphasis added) ("The Second Circuit's 1997 precedential decision in *Ricciuti* makes it clear that the fabrication and provision of material false evidence to a prosecutor is a violation of clearly established constitutional rights of the accused.")

information to prosecutors." *Ricciuti*, 124 F.3d at 130. At that point, he becomes responsible for the "harm occasioned by such an unconscionable action." *Id.* While such harm may arise from the introduction of fabricated evidence at trial, the act of forwarding false information to prosecutors itself "works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Id.* (*quoting United States v. Agurs*, 427 U.S. 97, 104 (1976)).

Fabricated evidence, notwithstanding its ultimate inadmissibility at trial, can influence many critical aspects of a prosecution, including a prosecutor's assessment of the reliability of other evidence, a prosecutor's initial decision to pursue a case, a magistrate's decision to grant bail, a grand jury's decision to indict, and a judge's rulings on pre-trial motions. Because both admissible and inadmissible evidence cause legally cognizable harms, the court sees, and defendants offer, no principled basis to provide relief for the fabrication of one but not the other....

Once the violation occurs, a § 1983 plaintiff can seek redress for all of the harm that results. *Id.* Defendants' offhand suggestion that plaintiff cannot recover for pre-trial deprivations of liberty occasioned by the detectives' fabrications is wholly inconsistent with *Ricciuti* and the multitude of cases involving fair trial claims asserted without reference to a criminal conviction. *See, e.g., Perez v. Duran*, 962 F.Supp.2d 533, 542-44 (S.D.N.Y. 2013) (denying summary judgment where it was a question of fact whether plaintiff's court appearances and travel restrictions were caused by defendant's alleged inclusion of false information in police report provided to prosecutor); *Keller v. Sobolewski*, No. 10-CV-5198 FB RML, 2012 WL 4863228, at *4-5 (E.D.N.Y. Oct. 12, 2012) (denying summary judgment where it was a question of fact whether defendant's knowingly false statements in police reports that were forwarded to prosecutors caused plaintiff's arrest and brief detention)....

*Nnodimele v. Derienzo*, 2016 WL 337751, at *12-13; *Dowling v. City of New York,* No. 11 CV 4954 (NGG)(RML), 2013 WL 5502867, at *7 (E.D.N.Y. Sept. 30, 2013) ("Plaintiff's **twenty-four hours in jail, culminating, like [the plaintiff in *Keller*] in adjournment in contemplation of dismissal**, is similar enough to warrant a finding that he was deprived of his liberty") (emphasis added); *Perez v. Duran*, 962 F.Supp.2d 533, 542-44 (SDNY 2013) (JGK) (**ROR pursuant to CPL § 510.40 and two appearances** total were sufficient liberty deprivations to support fair trial rights claim) (emphasis added).

Plaintiffs respectfully submit that the question is not whether Plaintiffs suffered a post-arraignment deprivation of liberty of the sort that would be required to sustain a Fourth

Amendment violation, but rather whether any "post-arraignment deprivation of liberty was the 'legally cognizable result of [the officer's] alleged misconduct in fabricating evidence.'" *Demosthene v. City of New York*, No. 14 CV 816 (SJ) (VMS), 2015 WL 5093116, at *12 (E.D.N.Y. June 26, 2015), *report and recommendation adopted*, No. 14 CV 816 (SJ) (VMS), 2015 WL 5093164 (E.D.N.Y. Aug. 28, 2015) (*citing Zahrey v. Coffey* ,221 F.3d 342, 354 (2nd Cir. 2000)); *see also Zahrey*, 221 F.3d at 344, 349-51 (everyone has the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity" ), 355.

Plaintiffs further respectfully submit that the appropriate focus in determining whether the deprivation of liberty triggered by the provision of materially false information to prosecutors is sufficient enough to warrant submission to a jury in connection with a fair trial rights claim, is whether a jury could find that the provision of such information caused a liberty deprivation causing material harm, in the form of any deprivation of life, liberty, or property, not limited to harm in the form of a Fourth Amendment seizure.[7] *See, e.g., Garnett III*, 2016 WL 5496761, at *11.

Against that backdrop, Plaintiffs respectfully submit that the Court should reconsider the decision to dismiss their fair trial rights claims, and reinstate those claims as to those Defendants whom a jury might reasonably find were sufficiently involved in the creation or provision of false information to prosecutors, related to which Plaintiffs were detained,

---

[7]     *See, e.g., Zahrey,* 221 F.3d at 348-354 (where an officer's initial act of misconduct – fabricating evidence and forwarding it to a prosecutor – leads to subsequent acts which might be characterized as "independent" intervening decisions or causes leading to liberty deprivations – such as the decision of a prosecutor to press charges, to set bail, or to initiate or continue a prosecution beyond arraignment - "[t]he question remains whether the liberty deprivations that occurred are legally traceable back even further to [the officer's] earlier investigatory act of fabrication"); *Morse v. Fusto*, 07-cv-4793 (CBA)(RML), 2013 WL 4647603, at *21 (EDNY Aug. 29, 2013) ("*Morse I*"); *Morse II*, 2015 WL 5294862, at *7; *Nnodimele*, 2016 WL 337751, at *14-15; *see also Schiller, et al. v. City of New York, et al.*, 04 Civ. 7922 (RJS)(JCF), 2008 WL 200021, at *10 (SDNY January 23, 2008) ("[t]he limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm").

arrested, and prosecuted, or failure to intervene in the same, as may subject them to liability under 42 USC 1983.

Reinstatement of Plaintiffs' fair trial rights claims is particularly important because, unless this Court reinstates them or their related malicious prosecution claims, Plaintiffs will be foreclosed from recovering for the harms caused by their multiple, post-arraignment court appearances, including their attendance at a two-day trial, as well as other harms caused by Defendants' fabrication of evidence against them, which they forwarded to prosecutors, causing Plaintiffs to suffer liberty and/or property deprivations.

## II.      The Court Should Reconsider The Decision to Dismiss Plaintiffs' Malicious Prosecution Claims (Decision, pp. 20-21)

Now that Plaintiffs are in possession of the transcript of Mr. Arbuckle's trial and some other records from trial counsel's files relating to the underlying criminal proceedings, a somewhat finer point can be put on some facts regarding Plaintiffs' malicious prosecution claims.

- After their arrests on January 1, 2012, Plaintiffs were each held around seven hours and released with Desk Appearance Tickets directing them to appear in the New York City Criminal Court on February 29, 2012.

- On February 29, 2012, Plaintiffs were arraigned and released on their own recognizance pursuant to CPL § 510.40(2).

- On April 20, 2012, Plaintiffs made second appearances in their cases, and the cases were adjourned until May 14, 2012 for trial.

- On May 14, 2012, both Plaintiffs' cases were calendared for trial, and they both appeared to be tried. The prosecutor answered ready for trial in Mr. Arbuckle's case, but not Mr. Soriano's.

- Mr. Arbuckle was therefore tried on May 14 and 15, 2012. On May 14, 2012 and May 15, 2012, Mr. Soriano remained available near the courthouse to testify as a witness in Mr. Arbuckle's trial and was about to be called as a witness in the trial when trial was adjourned until the next day.

- On May 15, 2012, both Plaintiffs testified in Mr. Arbuckle's trial and Mr. Arbuckle was acquitted. Mr. Soriano's case was dismissed on May 14 or 15, 2012.[8]

Therefore, in addition to around seven hours of pre-arraignment detention, between February 29, 2012, Plaintiffs were required to appear (1) on February 29, 2012 for their arraignments, (2) again on April 20, 2012 prior to trial, (3) and a third and a fourth time on May 14, 2012, and (4) on May 15, 2012, for trial, before Mr. Arbuckle's case was dismissed after trial and Mr. Soriano's case was also dismissed. And during the time period between February 29, 2012, when they were released on their own recognizance at their arraignments, CPL 510.40 imposed restraints on their travel and liberty.

Preliminarily, to the extent that the Court relied on *Faruki v. City of New York*, 517 F. App'x 1, 2 (2nd Cir. 2013), like *Janovic,* discussed above, *Faruki* is a summary order without precedential value. *See, e.g., Perez*, 962 F.Supp.2d at 542-543; *Evans*, 2015 WL 1345374, at *6,

---

[8]     Without the transcript of the proceedings in Mr. Soriano's case on that date, or access to the court records from the New York State Office of Court Administration, it will not be possible to confirm whether the prosecution was dismissed on speedy trial grounds, as alleged in the FAC, or whether the prosecution was dismissed on the motion of the prosecutor on the grounds that the prosecution could not prove the case against Mr. Soriano beyond a reasonable doubt, in light of Mr. Arbuckle's acquittal. In any event, both are favorable terminations on the merits and/or terminations on grounds consistent with innocence as is relevant to the malicious prosecution analysis. In this connection, Plaintiffs respectfully remind the Court that the standard on a Rule 12 motion is that such a motion should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nogbou v. Mayrose*, 400 Fed.Appx. 617, 619 (2nd Cir. 2010) (citation omitted). Because the case has not proceeded to discovery, Plaintiffs have not yet obtained the transcripts of the criminal court appearances leading up to the trial, or the records from the Office of Court Administration reflecting the New York City Criminal Court notations as to what occurred on each appearance as reflected in each Plaintiff's Court Action Sheet. Those records may reveal facts bearing on the extent of the liberty deprivations suffered by Plaintiffs as a result of their malicious prosecutions. For example, it may be, as frequently happens, that their counsel asked to excuse an appearance, and the Court rejected that application. Or, it may be on the record that a Plaintiff requested a particular post-arraignment adjournment date in order to travel, attend school, or for some other reason, and the Court rejected the application in favor of requiring an appearance, thereby interfering with travel, school, or other plans. These examples are not offered to suggest what actually happened on Plaintiffs' post-arraignment appearances – counsel has no independent recollection as to what happened on each court appearance, and the records counsel has access to do not contain that level of detail. However, as the transcripts and other court records will contain such information, counsel so advises the Court in connection with its analysis as to whether there are there are "no set of facts" that could emerge through discovery based on which the Court could grant relief.

n. 8. Plaintiffs respectfully submit that the binding precedents include *Swartz v. Insogna*, 704 F.3d 105 (2nd Cir. 2013), *Rohman v. New York City Trans. Auth.,* 215 F.3d 208 (2d Cir. 2000), and *Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997), as discussed below.

In *Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997), the Second Circuit made clear that the requirement to appear in court to answer criminal charges and the restrictions imposed upon a defendant's right to travel outside of the State of New York constituted a deprivation of liberty within the meaning of a federal malicious prosecution claim.  *Id.* at 946.

In *Rohman v. New York City Trans. Auth.,* 215 F.3d 208, 216 (2d Cir. 2000), the Second Circuit clarified that *Murphy's* definition of a post-arraignment deprivation of liberty encompassed both the requirement to remain available for court appearances, and the requirement to make the appearances.  As the *Rohman* Court held:

> I]n our view, Rohman has sufficiently demonstrated the requisite post-arraignment restraint of liberty. Specifically, Rohman alleged that he was required, as a condition of his post-arraignment release, to return to court on at least five occasions before the charges against him were ultimately dropped. In addition, we note that in New York, a criminal defendant released on his own recognizance, as Rohman was, must "render himself at all times amenable to the orders and processes of the court," N.Y. Crim. Proc. Law § 510.40, and therefore must ordinarily remain in the state. We conclude that these alleged limitations on his liberty, which as pleaded go beyond the fact of the arraignment itself, are enough, at least at the pleading stage, to implicate the Fourth Amendment.

*Rohman*, 215 F.3d at 216 (citing *Murphy*, 118 F.3d at 945-46).

Relying upon *Murphy* and/or *Rohman*, many district courts recognized that a plaintiff can establish a post-arraignment deprivation of liberty where they have been released on their own recognizance without travel restrictions, even prior to the Second Circuit's 2013 decision in *Swartz*.[9]

---

[9]  *See,, e.g., Kirk v. Metropolitan Transp. Auth.,* 99-CV-3787, 2001 U.S. Dist. LEXIS 2786, *46 (S.D.N.Y. March 19, 2001) ("[a]lthough Kirk's ability to travel out of the jurisdiction was not restricted when he was released on his own recognizance, the fact that he was required to appear in court on at least three occasions or

Then, in *Swartz*, a precedential case involving three post-arrest court appearances in connection with a Disorderly Conduct arrest, the Second Circuit again clarified:

> We have consistently held that a post-arraignment defendant who is "obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required" suffers a Fourth Amendment deprivation of liberty. *See Murphy*, 118 F.3d at 947; *Jocks*, 316 F.3d at 136 (concluding that "the requirements of attending criminal proceedings and obeying the conditions of bail" constitute a post-arraignment seizure*); Rohman v. New York City Transit Authority,* 215 F.3d 208, 215-216 (2ⁿᵈ Cir. 2000) (finding Fourth Amendment implicated where plaintiff "alleged that he was required, as a condition of his post-arraignment release, to return to court on at least five occasions before the charges against him were ultimately dropped," and where he was obligated by New York statute to "render himself at all times amenable to the orders of the court") (internal quotation marks omitted). When Insogna swore out a complaint against John and filed it in criminal court…[h]e thus put in motion proceedings that rendered the defendant at all time subject to the orders of the court, see [CPL § 510.40(2)], and foreseeably required him to incur the expense of a lawyer and the inconvenience and perhaps expense of multiple court appearances.

704 F.3d at 112; *see also Perez,* 962 F.Supp.2d at 542 (citing *Roham* for the proposition that "plaintiff's release on his own recognizance necessarily required the plaintiff to comply with travel restrictions" and upholding malicious prosecution claim where the only liberty deprivations were CPL 510.40 release and two court appearances); *Peterec v. Hilliard*, No. 12 Civ. 3944 (CS), 2013 WL 5178328, at *9 (SDNY Sept. 16, 2013) (finding sufficient liberty deprivation where there was one court appearance, no bail, and no travel restrictions).

---

face the issuance of a bench warrant rendered him effectively seized because he was 'subjected to restraints not shared by the public generally'") (quoting *Murphy*, 118 F.3d at 945) (internal citation omitted); *Willner v. Town of North Hempstead*, 977 F. Supp. 182, 189 (E.D.N.Y. 1997) (holding that the requirement of plaintiff to attend court appearances as a result of a criminal information constitutes a 'seizure' for purposes of a section 1983 claim for malicious prosecution); *Martinez v. Gayson*, 95-CV-3788, 1998 U.S. Dist. LEXIS 12281, at *9 (E.D.N.Y. June 30, 1998) ("[B]ecause during his trial Martinez was required to attend court proceedings . . . a post-arraignment deprivation of liberty can be said to have resulted."). As the Court held in *Genia v. Parker*, No 03-CV-0870, 2007 U.S. Dist. LEXIS 19700 (E.D.N.Y. Mar. 20, 2007), "in *Rohman*, the Second Circuit made clear that, even where there was no explicit order restricting out-of-state travel, appearing in court on five occasions, combined with the requirement to be amenable to orders of the court, in essence requires a defendant to 'ordinarily' remain in the state and, therefore, such conditions are sufficient to constitute a deprivation of liberty under the Fourth Amendment." *Genia*, 2007 U.S. Dist. LEXIS 19700, at *48-55 and n.25.

In this connection, another case cited by this Court, aside from *Faruki*, bears addressing. *Porat v. Lincoln Towers Community Ass'n*, 2005 WL 646093, at *3-4 (SDNY Mar. 21, 2005), *aff'd*, 464 F.3d 274 (2ⁿᵈ Cir. 2006), distinguishes *Murphy* and its progeny by emphasizing that the *Porat* plaintiff, who was given a summons or appearance ticket and that was dismissed when he appeared a few days later and there was no prosecution, arraignment, or post-arraignment travel restrictions, had not alleged "that he was arrested or arraigned on criminal charges and therefore he [could not] claim a deprivation of liberty 'pursuant to legal process" that substantiates his malicious prosecution claim". *See, e.g., Perez,* 962 F.Supp.2d at 541-42 (discussing *Porat*). Those facts distinguish *Porat* from a case where, as here, a person is arraigned on criminal charges, released on their own recognizance pursuant to CPL 510.40, and required to make four post-arraignment court appearances, before the charges are ultimately favorably dismissed on the merits.

Plaintiffs respectfully submit that the Court's decision to dismiss their malicious prosecution claims warrants reconsideration because the three post-arraignment appearances, including two days of trial, they were required to make before winning dismissal of the charges against them, and the requirement, pursuant to CPL 510.40, that they remain subject to the orders and processes of the Court during the pendency of the case between February and May of 2012, as pleaded, create at least questions of fact regarding whether Plaintiffs' post-arraignment deprivations of liberty were significant enough to count as "seizures" within the meaning of the Fourth Amendment, which should be the subject of discovery, at a minimum.

Reinstatement of Plaintiffs' malicious prosecution claims is particularly important because, unless this Court reinstates them or their fair trial rights claims, Plaintiffs will be foreclosed from recovering for the harms caused by their multiple, post-arraignment court

appearances, including their attendance at a two-day trial, as well as other harms caused by Defendants' malicious prosecution of them.

### III. The Court Should Reconsider The Decision Dismissing Plaintiffs' First Amendment-Based Time/Place/Manner-based, and Related, Claims (Decision, pp. 18-20)

The Court dismissed Plaintiffs' First Amendment, time/place/manner-based, and related claims, on the grounds that neither the FAC nor Plaintiffs' opposition to Defendants' motion to dismiss "specif[ied …] which restrictions [Plaintiffs] are referring to in connection with their First Amendment claim" and because "[a]s a result, the City is prevented from being able to mount an appropriate defense." Decision at p. 19, *citing*, *inter alia*, Fed.R.Civ.P. 8(a).

Although this Court primarily analyzed Plaintiffs' First Amendment-based claims under a retaliation theory, and correctly denied Defendants' motion to dismiss Plaintiffs' First Amendment claims insofar as they sound in that theory, it is important for Plaintiffs (and others like them) to be able to raise First Amendment claims, other than retaliation-based claims, in cases where police have at least arguably violated their First Amendment rights, in part because the elements of proof necessary to establish liability, and the related defenses, are different.[10] For example, whereas, to prove up a retaliation claim, a plaintiff must show malice and chill to prevail, in contrast, on a time, place, manner claim or theory, the government has the burden[11] to show that the restrictions imposed on protected conduct

---

[10]     Just as a plaintiff advancing a malicious prosecution claim under the Fourth Amendment may also pursue damages for harms that are not cognizable as Fourth Amendment violations, under Fourth or Sixth and Fourteenth Amendment-based fair trial rights violation claims or theories, *see* Point I above, so should a plaintiff advancing a First Amendment claim based on a retaliation theory be able to pursue other theories of First Amendment violations – particularly where, as here, no discovery has yet been conducted and the Court is ruling on the pleadings.

[11]     When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the government's obligation to prove that the alternative will be ineffective to achieve its goals. *See, e.g., United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000). With respect to governmental restrictions on protected expressive association and other First Amendment activity, the government bears the burden of

were narrowly tailored to serve a significant governmental interest and left open ample alternatives for expression. Beyond that, as a practical matter, such restrictions may be imposed in violation of the First Amendment without malicious or discriminatory intent, and/or without casting a chill within the meaning of First Amendment retaliation jurisprudence. Furthermore, as discussed below, retaliation-only claims may not capture all of the First Amendment harms occurring from a single incident involving an abridgement of those rights. For example, in addition to abridging Plaintiffs' First Amendment rights to observe and record the OWS demonstration and police response thereto, Defendants abridged the First Amendment rights of those who would have received information they may ultimately have published.

As Judge Swain has recently articulated: "While time, place, and manner restrictions are 'more typically invoked in the context of an *ex ante* restriction….the Second Circuit has recognized that a spontaneous police order to demonstrators to relocate can be viewed through the lens of time, place, and manner doctrine.'" *Christina Gonzalez* v. NYC, 14 Civ. 7721 (LTS), 2016 WL 5477774, *5-6 (SDNY Sept. 29, 2016) (quoting *Akinnagbe v. City of New York,* 128 F.Supp.3d 539, 548-49 (SDNY Sept. 1, 2015), discussing *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2nd Cir. 2013)). Although there were no such police orders to relocate given to Plaintiffs in this case prior to Plaintiffs' arrests, just as a police order to move from one place or another, or another police restriction on protected conduct on the street, may be viewed through a time, place, manner analysis when First Amendment rights are implicated, because the direction restricts conduct protected by the First Amendment, so can a full-flown arrest, because it, too, restricts conduct protected by the First Amendment (in ways that are arguably more severe).

---

proving the constitutionality of its actions, and identifying a substantial interest and justifying the challenged restrictions. *Id.* (citing cases).

Plaintiffs respectfully submit that allegations in the FAC gave Defendants adequate notice for pleading purposes related to Plaintiffs' First Amendment Time, Place, and Manner-based, and related, claims.[12] *See, e.g., Shamir v. City of New York*, 804 F.3d 533, 556 (2nd Cir. 2015) (although there was no explicit mention of an excessive force claim in the pleadings or any of the proceedings prior to appeal, because two paragraphs "set forth two separate ways that the police officers deprived Shamir of his constitutional rights", including one way that could have been construed as stating an excessive force claim, the Court was constrained to read the pleading as making out a Fourth Amendment-based excessive force claim for pleading purposes); *Caravalho v. City of New York*, 13-cv-4174 (PKC)(MHD), 2016 WL 1274575, at *13 (SDNY Mar. 31, 2016) (where Complaint did not explicitly allege fair trial rights claim, but plaintiffs "employ[ed] language indicative of a fair trial rights claim", although "the Court strain[ed] to read the First Amended Complaint as including a fair trial claim," it nevertheless "'infer[red] the existence of such a claim,'" citing *Shamir*, 804 F.3d at 556). In *Shamir*, one of the just two paragraphs the Court analyzed in finding that the pleadings stated an excessive force claim alleged in its first subparagraph harm in the form of "deprivation of the 'freedom from unreasonable searches and seizures of his person'" and alleged in its second subparagraph harm in the form of "deprivation of the 'freedom from arrest without probable cause'." The Court explained that the second, and only other, paragraph it cited – which stated in full: "'P.O. Doe placed Mr. Shamir in handcuffs and intentionally tightened them excessively, causing injury to Mr. SHAMIR's lower arms'" - "supplie[d] the factual predicate for understanding" the first subparagraph "to allege use of

---

[12]      Under Fed.R.Civ.P. 8(a), a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Additionally, under Fed.R.Civ.P. 8(e), "[p]leadings must be construed so as to do justice." Fed.R.Civ.P. 8(e).

excessive force in making the arrest." Those were the only allegations the *Shamir* Court found in the pleadings to support an excessive force clam – yet they were enough.

Read against that backdrop, in the context of the other allegations in the FAC, and taking into account the allegations in other, similar pleadings and related decisions in other, similar cases referred to and discussed in the FAC and in Plaintiffs' opposition papers, Plaintiffs respectfully submit that their theories related to their non-retaliation-based First Amendment claims are adequately set forth, for pleading purposes, to warrant discovery.

     **a.**     **The pleadings in the FAC related to Plaintiffs' arrests give Defendants adequate notice that Plaintiffs' arrests for purportedly violating PL 240.20(5) and PL 240.20(6), which occurred in the course of their documenting an OWS protest and police response thereto, were "restrictions" on their protected conduct and speech, which, as applied, prevented them from observing, recording, and disseminating information about police misconduct.**

In this case, Paragraph 185 of the FAC, cited at p. 19 of the Decision, sets forth challenges to "the **restrictions imposed by defendants on plaintiffs' First Amendment rights**" on the grounds that those restriction could not pass First Amendment muster under strict (FAC Paragraph 185(a)) or intermediate (FAC Paragraph 185(b)) scrutiny, afforded Defendants "unbridled discretion to limit or deny plaintiffs' abilities to engage in protected conduct" (FAC Paragraph 185(c)), and "[a]mounted to the imposition of strict liability on plaintiffs for participating in protected conduct" (FAC Paragraph 185(d)) (emphasis added). The preceding paragraph in the FAC explains: "**Each plaintiff was actually chilled in that each plaintiff was prevented** and/or deterred **from participating in protected conduct on the date of** and after **the incident** as a result of defendants' violations of their rights." FAC Paragraph 184 (emphasis added).

Additionally, Plaintiffs' MOL at pp. 1-3, summarizes the facts pleaded in the FAC related to the circumstances surrounding Plaintiffs' arrests, including that they were

prevented from observing and recording police response to the OWS demonstration when police suddenly arrested them as part of the perceived "disorderly group" and applied the Penal Law's prohibitions against Disorderly Conduct as purported justifications for Plaintiffs' arrests, thereby "supplying the factual predicate[s] for understanding" the "separate ways that the police officers" deprived Plaintiffs of their First Amendment rights outlined in Paragraph 185 of the FAC, *see Shamir*, 804 F.3d at 556. Paragraph 186 of the FAC, which follows Plaintiffs' explanation as to the ways in which the "restrictions imposed" discussed just previously in Paragraph 185 of the FAC, makes clear that those same restrictions were expressions of municipal policies, practices, or customs, they could also trigger *Monell* liability. In this connection, the Court's analysis mentioned and to a certain extent discussed Plaintiffs' *Monell* claims[13]. Among those *Monell* claims enumerated in Paragraph 221 of the FAC are challenges to:

    a.   The policy and practice of failing to ensure that constitutionally meaningful and adequate dispersal orders and opportunities to disperse are given prior to effecting arrests in connection with First Amendment assemblies;

    b.   […];

    c.   The policy and practice of treating perceived "groups" of people as a "unit" for "mass arrest" probable cause determination purposes without ensuring that lawfully authorized and constitutionally significant notice, and a meaningful opportunity to disperse, were given and disregarded prior to treating the perceived "group" as a "unit";

    d.   The policy and practice of applying PL § 240.20 (5) (Disorderly Conduct – Blocking Pedestrian or Vehicular Traffic) in circumstances where there is no lawful authority to arrest or detain perceived "groups" of people;

    e.   The policy and practice of applying PL § 240.20 (6) (Disorderly Conduct – Failure to Obey Lawful Dispersal Order) in circumstances where neither

---

[13]    *See* Decision at p. 18 ("Plaintiffs also seem to claim that a number of municipal policies imposed impermissible time, place, and manner restrictions on Plaintiffs' speech"); p. 19 ("The Amended Complaint describes a number of municipal policies. Indeed, in making their *Monell* claims (discussed below), Plaintiffs list nine different municipal policies that they claim are unconstitutional".

lawful dispersal orders, nor meaningful opportunities to disperse, were in fact given;

f.   […]; [and]

g.   The use of police resources to corral and trap perceived participants in First Amendment assemblies….

FAC Paragraph 186(a), (c)-(e), and (g).

Plaintiffs respectfully submit that those allegations put Defendants on adequate notice that Plaintiffs intend to challenge the application of PL 240.2(5) and 240.20(6) to the circumstances of their arrests, in connection with their false arrest, First Amendment, and related *Monell* claims.

With respect to the Court's holding that, in addition to failing to be sufficiently specific in the pleadings regarding the precise nature of their non-retaliation-based First Amendment claims, "Plaintiffs do not specify…in their Opposition" to Defendants' summary judgment motion, "which restrictions they are referring to in connection with their First Amendment claim," *see* Decision at p. 19, Plaintiffs respectfully submit that Plaintiffs' MOL does amplify the allegations in the FAC regarding the nature of Plaintiffs' non-retaliation-based First Amendment claims.

For example, at pp. 16-19 of Plaintiffs' MOL (discussing Plaintiffs' false arrest claims) and pp. 25-30 of Plaintiffs' MOL (discussing, *inter alia*, Plaintiffs' First Amendment-based claims), Plaintiffs cite, and to a certain extent discuss, the following cases arising from the mass arrests made during the 2004 Republican National Convention ("RNC") and decisions in them (each of which is also cited to and discussed in the FAC[14]): *Schiller, et al. v.*

---

[14]      Several of the allegations in Paragraph 222(f) through (l) of the FAC refer to RNC cases as well as the *Callaghan* case relating to months of mass arrests made at Critical Mass bicycle rides thereafter, in which there was significant discovery conducted before the cases were ultimately settled, as well as, in the RNC cases, significant briefing on the same First Amendment-based claims and theories, that the Court has found are not adequately pleaded in this case. Having participated in drafting both several complaints in the RNC cases as

*City of New York, et al.*, 04 Civ. 7922 (RJS)(JCF), 2008 WL 200021, (SDNY January 23, 2008) ("*Schiller I*"), *reconsideration den'd*, *Abdell v. City of New York*, 2008 WL 2540813 (SDNY June 25, 2008); *aff'd*, *Schiller v. City of New York*, 2009 WL 497580 (SDNY, Feb. 27, 2009) ("*Schiller II*"); *MacNamara, et al. v. City of New York*, 04 Civ. 9216, 275 F.R.D. 125, 154 (May 19, 2011) (SDNY) (RJS) (JCF); and *Dinler, et al. v. City of New York,* 04 Civ. 7921 (RJS) (JCF), 2012 WL 4513352, at *3-6 (SDNY Sept. 30, 2012).

Those cases all deal with as-applied challenges to the restrictions imposed on perceived participants in and bystanders and observers near First Amendment assemblies in connection with the RNC, including challenges to the application of PL 240.02(50 and 240.20(5), as if they were strict liability statutes, pleaded in a manner similar to the manner in which analogous claims were pleaded in this case.[15]

---

well as the *Callaghan* Complaint, as well as having litigated in the RNC cases, the *Callaghan* case, and many Occupy Wall Street-related cases, as well as related cases in the federal and state courts, continuously over the course of the past decade, I respectfully submit that, although this is this Court's first experience with counsel for Plaintiffs, defense counsel, given their experience in defending these cases over the years, was and is on notice as to Plaintiffs' non-retaliation-based First Amendment claims and theories.

[15]      In *Schiller I*, 2008 WL 200021, at *6-7, Judge Francis granted the applications of the plaintiffs in the dozens of RNC cases, including putative classes grouped around mass arrest locations, which were later certified, to amend the operative pleadings to include as-applied, First Amendment-based challenges to police uses of PL §§ 240.20(5) and 240.20(6) in the context of the RNC mass arrests. After rejecting the plaintiffs' proposed facial challenges on the grounds that the word "obstruct" in PL § 240.20(5) was sufficiently defined given the specific limitation that has been imposed by New York courts "that [the operative] 'obstruction' must be '[s]omething more than [] temporary inconvenience to pedestrians'" and emphasizing the requirement of a knowing and intentional mental state,  the Court allowed plaintiffs' as-applied challenges to PL §§ 240.20(5) and 240.20(6) to proceed based on plaintiffs' allegations "that the statute was used as a pretext to remove demonstrators where (1) there was no serious interference with traffic, (2) only a few demonstrators were blocking traffic at a location where the NYPD made mass arrests, (3) a crowd was sealed off without a reasonably audible order and opportunity to disperse, or (4) demonstrators had been given express permission to march" particularly "[g]iven that the underlying factual allegations are already a part of the[] complaints…., and that the same claims are at issue in other RNC complaints, including those dating back to 2005,….the City has been on notice of these claims and will not be unduly prejudiced by having to litigate against them"). *Compare with* FAC, as described in Plaintiffs' MOL at pp. 1-3. In denying reconsideration of *Schiller I* in *Abdell*, 2008 WL 2540813, at *1, Judge Francis repeatedly noted the limiting constructions regarding the needs that Disorderly Conduct arrests for PL § 240.20(5) violations be predicated on the basis of "'more than merely inconvenienc[ing] pedestrian or vehicular traffic'", as stressed in *Schiller I*, as well as the requirement that the person to be arrested have "acted with a mental state greater than negligence." Judge Sullivan affirmed those determinations on review. *See Schiller II*, 2009 WL 497580. Then, in *MacNamara*, 275 F.R.D. 125, 133-5, 143, 145-6, Judge Sullivan granted class certification to, *inter alia*, six "mass arrest" subclasses, finding that there were common questions "regarding the alleged unconstitutional policy or practice of conducting indiscriminate mass arrests" involving "group arrest decisions or procedures" based on which "individuals … were arrested as a

In this connection, it should be noted that Plaintiffs, who sought to observe document police interactions with protesters for potential publication, along with other members of the public, have protected rights to observe and document police interactions with members of the public, including police misconduct, in the streets, subject to conten-neutral and reasonable time, place, and/or manner restrictions, such as reasonable directions to move from one location to another, where the second location provides ample alternatives to observe and document police activity (including arrest activity), and where it is narrowly tailored to serve a significant governmental interest.

Independent of other applicable constitutional protections[16] and beyond them, observing and/or documenting the conduct of uniformed police performing their duties in a traditional public forum such as a New York City sidewalk is further protected by the First Amendment to the United States Constitution, *see, e.g., Higginbotham v. City of New York*, No. 14-cv-8549 (PKC), 2015 WL 2212242, at *8-10 (SDNY May 12, 2015) (citing and discussing, *inter alia, Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *see also von Bulow by Auersperg v.*

---

group based on the alleged conduct of the group." The Court began by analyzing two paragraphs in the operative pleading, Paragraphs 71 and 72, *see* 275 F.R.D. at 133; *see also* Dkt. No. 32-1 in this case (including Paragraphs 71 and 72 of the *MacNamara* pleading), and then considered the facts alleged as they related to each arrest location, *see* 275 F.R.D. at 133-5, in light of those paragraphs, in certifying those "mass arrest" subclasses. In other words, in determining whether the operative pleadings gave adequate notice to Defendants, and other wise passed muster, to support class certification, the Court engaged in an analysis similar to the analysis of the Second Circuit in *Shamir*. And finally with respect to the RNC cases, following years of discovery, in *Dinler*, 2012 WL 4513352, at *4-6, Judge Sullivan set froth the relevant First, Fourth, and Fourteenth Amendment legal frameworks, in connection with probable cause analyses that the Court then applied to two mass arrest locations, *id.* at *6-15, ultimately determining that summary judgment was warranted as to Plaintiffs' claims regarding one arrest location, but that summary judgment could not be granted on Plaintiffs' as-applied challenges to PL §§ 240.20(5) and 240.20(6) and other claims related to a second arrest location.

[16]   Engaging in those activities is generally protected by fundamental Due Process and other rights to be left alone by the government and to move freely, based in the Fourth and Fourteenth Amendments to the United States Constitution, and otherwise.

*von Bulow*, 811 F.2d 136, 144 (2nd Cir. 1987) (citing N.Y. Civ. Rights Law § 79-h(b) (*see* pp. 25-26 of Plaintiffs' MOL).

Setting aside Judge Castel's cogent analysis of the First Amendment aspects of the rights to observe and record in *Higginbotham*, which admittedly analyzed the clearly established First Amendment rights to record and observe in the context of a retaliation-based First Amendment claim, relevant United States Department of Justice ("DOJ") submissions in federal litigation reflect that the United States Government's position, citing to an explaining the same caselaw, that the rights to observe and/or document police in the course of their duties in public places have been and are clearly established, and the DOJ views violations of those rights not only through the lens of potential retaliation in violation of the First Amendment, but also – and really, in the first instance – through a time/place/manner lens.[17]

In this connection, according to the DOJ, "[t]he right to record police officers while performing public duties in a public place…[is] not only required by the Constitution[, it is] consistent with our fundamental notions of liberty, promote[s] the accountability of our governmental officers, and instill[s] public confidence in the police officers who serve us daily….the First Amendment is implicated when a private citizen records officers in the public discharge of their duties, and [police must] take steps to ensure that the First Amendment is upheld." *Sharp* SOI at pp. 1, 4-7 ("Federal courts have recognized that recording devices are a form of speech through which private citizens may gather and disseminate information of public concern, including the conduct of law enforcement

---

[17]     *See* Statement of Interest of the United States dated January 10, 2012, ECF No. 24 in *Sharp v. Baltimore City Police Dept.*, Civil No. 1:11-cv-02888-BEL (D.Md.) (the "*Sharp* SOI"), a true copy of which is attached as "Appendix A"; May 12, 2012 letter filed by United States Department of Justice – Civil Rights Division – Special Litigation Section in *Sharp*, (the "*Sharp* Letter") , a true copy of which is attached as "Appendix B"; and Statement of Interest of the United States dated March 4, 2013, ECF No. 15 in *Garcia v. Montgomery County, Maryland, et al.*, 8:13-cv-03592-JFM (D. Md.) (the "*Garcia* SOI"), a true copy of which is attached as "Appendix C".

officers….[and **t]he right to record police activity is limited only by 'reasonable time, place, and manner restrictions'**") (emphasis added) (quoting, citing, and discussing, *inter alia, Glik, Smith*, and *Fordyce*); *see also MacNamara*, 275 F.R.D. at 141 (also recognizing "the First Amendment rights of the audience, which 'has a primary interest i[n] having information readily available to it'") (citation omitted).

Similarly, in the *Sharp* Letter, articulating "the United States' position on the basic elements of a constitutionally adequate policy on individuals' right to record police activity," the DOJ insisted that any resolution of the injunctive relief claims at issue in that case related to bystander observation and recording of police activity in traditional public fora

> should include policy and training requirements that are consistent with the important First, Fourth, and Fourteenth Amendment rights at stake when individuals record police officers in the public discharge of their duties. These rights, subject to narrowly-defined restrictions, engender public confidence in our police departments, promote public access to information necessary to hold our governmental officers accountable, and ensure public and officer safety.

*Sharp* Letter at p. 1; *see also id.* at p. 2 (recommending that appropriate policies "should affirmatively set forth the contours of individuals' First Amendment right to observe and record police officers engaged in the public discharge of their duties"); pp. 5-7 (recognizing that **"[t]he right to record police activity is limited only by 'reasonable time, place, and manner restrictions'"** and that "[t]ime, place, manner restrictions on First Amendment speech must 'leave open ample alternatives for communication of the information'"**) (internal citations omitted) (emphasis added)).

And also similarly, in the *Garcia* SOI, the DOJ urged the Court to "find that both the First and Fourth Amendments protect an individual who peacefully photographs police activity on a public street" and, in recognition of its "strong interest in ensuring that individuals' constitutional rights are protected when they observe and document police

carrying out their duties in a public setting", expressed its "concern[] that discretionary charges, such as disorderly conduct, loitering, disturbing the peace, and resisting arrest, are all too easily used to curtail expressive conduct or retaliate against individuals for exercising their First Amendment rights. The United States believes that courts should view such charges skeptically to ensure that individuals' First Amendment rights are protected." *Garcia* SOI at pp. 1-2; *see also id.* at pp. 5-11 (discussing the contours of First Amendment rights to record public police activity in a traditional public forum, making clear that "discretionary charges [such as disorderly conduct, loitering, disturbing the pace, and resisting arrest] may not be used to chill protected speech activity").

Moreover, the rights peacefully to observe and document police actions in the performance of their duties in public places have long been enshrined in often-ignored NYPD policy.[18] In 1977, the NYPD entered into a Stipulation and Order in *Black v. Codd*, 73 Civ. 5283 (JMC) (SDNY, June 1, 1977). The Stipulation and Order states:

---

[18]     Upon information and belief, the version of the NYPD's Patrol Guide Section 208-03 (governing Arrests – General Processing) in effect on the date of the incident provided, in pertinent part:

**OBSERVERS AT THE SCENE OF POLICE INCIDENTS**

As a rule, when a police officer stops, detains or arrests a person in a public area, persons who happen to be in or are attached to the area are naturally in position to and are allowed to observe the police officer's actions. This right to observe is, of course, limited by reasons of safety to all concerned and as long as there is no substantive violation of law. The following guidelines should be utilized by police officers whenever the above situation exists:

    a.   A person remaining in the vicinity of a stop or arrest shall not be subject to arrest for Obstructing Governmental Administration (Penal Law, § 195.05) unless the officer has probable cause to believe he person or persons are obstructing governmental administration.

    b.   None of the following constitutes probable cause for arrest or detention of an onlooker unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated:

        (1)  Speech alone, even though crude and vulgar
        (2)  Requesting and making notes of shield numbers or names of Officers
        (3)  Taking photographs, videotapes or tape recordings
        (4)  Remaining in the vicinity of the stop or arrest.

> [I]t is the policy of the New York City Police Department and the defendants that when a person (or persons) is detained, stopped or arrested in public areas, a person or persons not involved in the conduct of which the first person is stopped or arrested may remain in the vicinity of the stop or arrest as an onlooker or onlookers, subject to the safety of the person stopped, the third persons, the general public, and officers of the Police Department, and to provisions of law e.g. P.L. § 195.05.

The Stipulation and Order defines an "onlooker" as a "person remaining in the vicinity of a stop or arrest" and states that onlookers "shall not be subject to arrest for violation of Penal Law § 195.05 unless the officer has probable cause to believe a violation of § 195.05 exists."  It further states that "[t]aking photographs" and "[r]emaining in the vicinity of the stop or arrest" explicitly do not "constitute[] probable cause for arrest or detention of an onlooker unless safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated." The Stipulation and Order also requires that the arresting officer shall "report the action" of a bystander arrest to a supervisor at the precinct. The Stipulation and Order has historically been ignored.  *See, e.g., Tonge v. Kelly*, 19993 WL 16121 (EDNY, 1993) ("the City failed for ten years to maintain the formal guidelines to which it had agreed and to inform its police recruits and officers in its Patrol Guide of the standards established in the *Codd* consent order").[19]

---

c.   Whenever an onlooker is arrested or taken into custody, the arresting officer shall request the patrol supervisor to the scene, or if unavailable, report the action to the supervisor where the person is taken.

This procedure is not intended in any manner to limit the authority of the police to establish police lines, e.g., crowd control at scenes of fires, demonstrations, etc.

[19]   In this connection, although a violation of NYPD policy does not amount to a constitutional violation, the objective standards to be applied in determining reasonableness as it relates to probable cause or uses of force, or restrictions on First Amendment-protected conduct, will ultimately require the development of a record and eventual evaluation of the Defendants' actions, either by the Court in a summary judgment motion, or by a jury, in light of the NYPD's policies and practices regarding uses of force and demonstration policing/crowd control, as well as the Defendant officers' related training. The NYPD Patrol Guide sets forth the standards of care police officers are required to utilize and it is appropriate to consider the Patrol Guide in

Against that backdrop, Plaintiffs respectfully submit that, for pleading purposes, under Fed.R.Civ.P. 8(a) and (e), the FAC adequately puts Defendants on notice that the restrictions imposed - Plaintiffs' baseless arrests for allegedly committing Disorderly Conduct in violation of PL §§ 240.20(5) and 240.20(6) although they did not block pedestrian or vehicular traffic or refuse to comply with lawful dispersal orders, let alone recklessly or intentionally causing or recklessly creating the risk of serious public inconvenience, annoyance, or alarm - on Plaintiffs' protected conduct – to wit, observing and photographing or otherwise recording an OWS demonstration and police response thereto, with the intent to publicly disseminate some of the newsworthy observations and recordings - prevented them from participating in that protected conduct on the date of their arrests, causing irreparable harm, to Plaintiffs and their intended audiences, in the form of losing the ability to record and subsequently communicate observations regarding the OWS demonstration and police response thereto, thereby violating the First Amendment by imposing restrictions, including through the application of PL §§ 240.20(5) and 240.20(6), that were content-based and failed to pass strict scrutiny, content-neutral but lacked narrow tailoring and/or failed to provide ample alternatives for communication, granted police unbridled discretion to grant or deny permission to engage in protected conduct, and/or

---

connection with determining objective reasonableness in the context of false arrest and excessive force claims. *Brown v. City of New* York, 798 F.3d 94, 101 at fn 11 (2d Cir. 2015) (observing that in *Tennessee v. Garner*, 471 U.S. 1 (1985) the Supreme Court considered police regulations from several jurisdictions in making a constitutional ruling on excessive force); *Smith v. city of New York*, 2015 WL 4643725 *3 (S.D.N.Y. 2015); *Jenkins v. Victor Charles, et al.,* 1:13-cv-03405 (KPF) (SDNY), Dkt. 90 (November 14, 2015 Order denying Defendants' pre-trial motion *in limine* to preclude plaintiff from referring to or offering NYPD training and/or Patrol Guide materials into evidence regarding plaintiff's false arrest and excessive force claims based on *Brown* and *Smith*); *De Michele v. City of New York,* No. 09 CIV. 9334 (PGG), 2012 WL 4354763, at *21 (S.D.N.Y. Sept. 24, 2012) ("In the event that a defendant NYPD officer violated the NYPD Patrol Guide, that may be evidence of excessive force"); s*ee also, e.g., Weigel v. Broad*, 544 F.3d 1143, 1154-55 (10th Cir. 2008) (evidence of the defendant's training is admissible to demonstrate the reasonableness of their actions, which should be assessed in light of the officer's training).

imposed strict liability on Plaintiffs for fictional violations of PL §§ 240.20(5) and 240.20(6).[20]

For the foregoing reasons, Plaintiffs respectfully submit that this Court should reconsider its Decision to dimiss Plaintiffs' First Amendment-based claims, aside from their retaliation-based claims.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully pray that the Court reconsider the Decision to the extent set forth above, or for such other relief as the Court may deem just and proper.

DATED:  Brooklyn, New York
     October 14, 2016

/S/

_____

Gideon Orion Oliver
Attorney at Law
Counsel for Plaintiffs
277 Broadway, Suite 1501
New York, NY  10007
646-263-3495

cc:  All parties (by ECF)

---

[20] Finally in this connection, it should be noted that, on p. 11 of the Decision, the Court cited *Dallas Pesola v. City of New York*, No. 15 Civ. 1917 (PKC), 2016 WL 1267797 (SDNY Mar. 30, 2016), in connection with its probable cause analysis. *Pesola*, in turn, cites *United States. v. Nelson*, 10 Civ. 414 (PKC), 2011 WL 1327332, at *3 (SDNY Mar. 31, 2011), *aff'd*, 500 F. App'x 90 (2nd Cir. 2012) (unpublished summary order), related to its analysis of the Disorderly Conduct provisions in PL §§ 240.20(5) and 240.20(6). *Nelson*, in turn, relies on *People v. Galpern*, 259 N.Y. 279 (1932) (holding that a dispersal order may be considered lawful unless "circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order"). To similar effect, and sometimes relied on by defense counsel, is *People v. Todaro*, 26 NY2d 325 (1970) (same). But both *Galpern* and *Todaro* have been recognized as having been overruled on those points – particularly when applied to conduct even arguably within the First Amendment's sweep. *See, e.g., Akinnagbe*, 128 F. Supp. 3d at 547-8 (recognizing that "*Galpern's* 'purely arbitrary' standard is too broad" – particularly where there are First Amendment rights at stake, but also facially, on vagueness and overbreadth grounds); *Adams v. City of New York*, No. 15CV6741 (DLC), 2016 WL 1169520, at *3 (S.D.N.Y. Mar. 22, 2016) (recognizing that "[w]hether *Galpern* remains good law is an open question [because] Supreme Court cases and more recent Second Circuit precedent indicate that police officers' power to interfere with peaceful and orderly protests is more limited than *Galpern's* interpretation of the disorderly conduct statute implies"); *People v. Reed*, 19 Misc. 3d 217, 219 n. 1 (NY Crim. Ct. 2008) (recognizing that the *People v.* "*Jones* decision [9 N.Y.3d 259 (2007)] appears to have partially overruled, *sub silentio*, the Court's previous ruling in *People v. Todaro*"); *People v. Taylor*, 19 Misc. 3d 1114(A), 859 N.Y.S.2d 906 (Crim. Ct. 2008) (same).